GRACEVILLE STATE BANK v. FERDINAND HOFSCHILD.[1]

January 22, 1926.

No. 25,067.

**Statutory notice to cancel executory contracts of sale of real estate applies, whatever the form of contract.**

1. Executory contracts for the sale of real estate, whatever their form, may be terminated in the manner authorized by G. S. 1923, § 9576, for the default of the vendee.

**Such contracts may be canceled by abandonment with acquiescence of vendor and vendee.**

2. They may also be terminated by abandonment acquiesced in by both parties.

**In this case right of owner prior to that of chattel mortgagee of vendee.**

3. Where such a contract is terminated for the default of the vendee and he abandons the land, and the owner takes possession of it before the crop matures, he is entitled to the crop as against the holder of a chattel mortgage given by the vendee.

Chattel Mortgages, 11 C. J. p. 505 n. 79 New.

Crops, 17 C. J. p. 379 n. 6, 8.

Vendor and Purchaser, 39 Cyc. pp. 1354 n. 20; 1368 n. 37 New; 1369 n. 43; 1370 n. 53; 1384 n. 79.

Action in replevin in the district court Traverse county to recover possession of certain crops or their value. The case was tried before Flaherty, J., who directed a verdict in favor of defendant. Plaintiff appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Houston & McDonald*, for appellant.

*Murphy & Johanson*, for respondent.

TAYLOR, C.

Action in replevin to obtain possession of the grain raised on a farm in Traverse county in the year 1924. The trial court directed

[1]Reported in 206 N. W. 948.

a verdict for defendant, and plaintiff appealed from an order denying its motion for judgment non obstante or for a new trial.

The parties stipulated as to the quantity of grain and its value, and the question presented is whether the plaintiff or the defendant is entitled to it.

In September, 1917, John S. Baer, who then owned the farm, entered into a contract with Casper Brog by which Baer agreed to sell and Brog agreed to buy the farm for the sum of $17,000, to be paid in instalments at the times and in the manner therein set forth. In 1918 Baer conveyed the farm to defendant subject to the Brog contract and also assigned to defendant his interest in the contract. Although the contract contained no provision concerning the right to the possession of the farm, Brog took possession of it and operated it until the spring of 1924. In October, 1923, Brog executed to plaintiff a chattel mortgage upon the crop to be grown on the farm in the season of 1924, and it is under this mortgage that plaintiff claims the grain in controversy.

Brog was hopelessly in debt. All his personal property was covered by a chattel mortgage to the Big Stone County Bank. The deferred instalments on his contract became due in 1921 and were unpaid, and in 1923 amounted to considerably more than the value of the farm at that time, land values having fallen. An effort was made to obtain a loan on the farm to pay a past due mortgage thereon which Brog had assumed as a part of the purchase price, defendant consenting to take a second mortgage for the remainder of the purchase price, but the attempt to secure the loan failed. Brog planted the 1924 crop. On May 1, 1924, defendant served upon him a notice as provided by G. S. 1923, § 9576, to terminate his contract unless he made the past due payments within 30 days after the service of the notice. A few days later the Big Stone County Bank foreclosed its chattel mortgage and sold all his personal property at auction. In the latter part of May he went to the southern part of the state where he had formerly lived and instituted proceedings to be adjudged a bankrupt. He returned for a few days in the early part of June, and either then or before

he left in May told plaintiff that he had left the farm and that plaintiff could take the crop, but must look after it itself. He went back to his former home where he has since resided. He testified that he left the farm with no intention of returning to it. In the early part of July, 1924, defendant, finding that Brog had left and that the farm was deserted, took possession of it and in the latter part of July brought his family from Renville county and established his home thereon.

Plaintiff, on being told by Brog that he had left the farm, made an arrangement with Thomas Hess, who resided upon an adjoining farm, to harvest and thresh the crop. When defendant took possession of the farm he was informed of this arrangement by Hess and thereupon notified Hess that he owned the farm and the crop. He also notified plaintiff to the same effect. Before leaving for Renville county to close up his affairs there and bring his family, household goods and farming equipment to the farm, he arranged with Hess to harvest the grain if it should ripen before his return. When he returned he found that it had ripened and that Hess had cut the greater part of it. He brought two men with him and joined with Hess in cutting and shocking the remainder. Six farmers— Hess, defendant and four others—formed what they termed a "ring" to thresh their grain out of the shock. Hess seems to have made the arrangements. They engaged the threshing machine and each furnished his proportionate part of the teams and help for all six jobs. It was an exchange of work so far as teams and help were concerned, but each was to pay the machine bill for his own grain. Defendant furnished two men and two teams as his share. The grain in controversy was threshed under this arrangement and placed in the granary on the farm, except a small quantity delivered to Hess.

The facts are not in dispute. Defendant took possession of the farm as owner before the crops matured and claimed them as a part of his property. Brog had abandoned them. He made no attempt to harvest them and never claimed any right to do so. While growing, the crops were a part of the land. Plaintiff's claim

to them rests upon Brog's right to the use of the land. Brog could give plaintiff no greater interest in them than he possessed himself. If his right to the use of the land terminated before the crops were harvested, his interest in the crops also terminated as he did not retain possession. Aultman & Taylor Co. v. O'Dowd, 73 Minn. 58, 75 N. W. 756, 72 Am. St. 603; Marks v. Jones, 71 Minn. 136, 73 N. W. 719; Woodcock v. Carlson, 41 Minn. 542, 43 N. W. 479; Lake v. Lund, 92 Minn. 280, 99 N. W. 884. This proposition is practically conceded and the question argued is whether Brog's rights under the contract had terminated. Defendant insists that Brog's rights had been terminated by the service of the statutory notice and his failure to make the delinquent payments and also by his abandonment of the premises.

It is conceded that the notice to terminate the contract was sufficient in form and substance under G. S. 1923, § 9576, but plaintiff contends that the contract is not within the operation of that section, for the reason that it contains no express provision making time of its essence and authorizing the vendor to cancel it for the default of the vendee. The statute provides that "when default is made in the conditions of any contract for the conveyance of real estate or any interest therein, whereby the vendor has a right to terminate the same, he may do so by serving upon the purchaser" the notice prescribed therein. We think the statute applies to all executory contracts for the sale of real estate which, under the law as it existed prior to the enactment of the statute, the vendor had the right to terminate by his own act for the default of the vendee. Under the prior law, if time was made of the essence of the contract and the vendee failed to perform at the stipulated time, the vendor could forfeit the contract without notice. Dun. Dig. & Supps. § 10033; 39 Cyc. 1369. If time was not of the essence of the contract, the vendor could notify the vendee to perform, allowing a reasonable time therefor, and if the vendee failed to perform within the time specified the vendor could then cancel the contract. Austin v. Wacks, 30 Minn. 335, 15 N. W. 409; O'Connor v. Hughes, 35 Minn. 446, 29 N. W. 152; McNamara v. Pengilly, 58 Minn. 353,

59 N. W. 1055; Tingue v. Patch, 93 Minn. 437, 101 N. W. 792; 39 Cyc. 1370, and cases cited.

The statute takes from the vendor in all cases the arbitrary power to terminate the contract without notice. It prescribes the character of the notice and requires it to be given in all cases, and also prescribes the manner in which it shall be served, and the time within which the vendee must either perform or permit the contract to lapse. It had a double purpose—to ameliorate the harsh rule of the common law and to remove grounds for controversy or dispute. To accomplish this latter purpose, it provided, among other things, that a vendor who had the right to terminate a contract and wished to do so must follow the prescribed procedure in all cases. He cannot terminate any contract for the sale of real estate in any other manner by his own act. The statute does not take away the right to terminate contracts in any case, nor purport to do so, but only regulates the manner of exercising that right. And we think the legislature manifestly intended the statute to apply in all cases where the vendor has that right, whatever the form of the contract. It follows that the contract in question was lawfully terminated by the service of the notice and the failure of Brog to comply therewith.

Defendant contended and the trial court held that, even if the contract had not been terminated by the giving of the statutory notice, it had been terminated by the fact that Brog had intentionally and unequivocally abandoned it and defendant had acquiesced therein. The undisputed evidence justified this conclusion. Mathwig v. Ostrand, 132 Minn. 346, 157 N. W. 589. Whether the contract had or had not been legally terminated by the notice, Brog acquiesced therein and abandoned all claim to both farm and crop. The ruling of the learned trial court was clearly correct and the order is affirmed.