STATE BANK OF LORETTO v. ROBERT J. DIXON
AND OTHERS.[1]

January 2, 1943.

No. 33,159.

[1]Reported in 7 N. W. (2d) 351.

*C. A. Youngquist,* for appellants.

*Tautges, Eichelzer & Tautges,* for plaintiff-respondent.

STREISSGUTH, JUSTICE.

Plaintiff brought this statutory action of claim and delivery to obtain possession, for the purpose of a chattel mortgage fore-

closure, of certain farm machinery, livestock, and crops mortgaged to it by one Robert J. Dixon (hereinafter called the tenant). Margaret Gallagher, as executrix of the last will and testament of one Robert Dixon (hereinafter called the testator), an uncle of Robert J. Dixon and the owner of the real estate upon which the crops were growing, answered claiming ownership of the crops and counterclaimed for the value thereof and for the reasonable value of feed and pasturage for the mortgaged livestock after its seizure. Georgia M. Dixon and Robert W. Dixon, minor children of the mortgagor (hereinafter called the minors), also answered asserting ownership and right to possession of said premises and the crops as devisees under the will of the testator and interposed three counterclaims: (1) For the reasonable value of the feeding, care, and pasturage of the livestock; (2) for the conversion of the crops; and (3) for damages for wilful trespass upon their real estate. The trial court made findings in favor of plaintiff on all issues, and the minor defendants appealed.

On January 27, 1939, the bank lent the tenant $1,350 on his note, due in six months, taking as security a chattel mortgage executed by him on that date. The mortgaged property included horses, cattle, hogs, miscellaneous farm machinery, and the tenant's "undivided *all* interest in and to any and all crops of every kind * * * which have been or may hereafter be sown, grown, planted, cultivated, or harvested during the year 1939" on certain "real estate, situated and being in Hennepin County, State of Minnesota, to-wit: 100 acres in sec 27-119-24." The mortgage recited: "All said property being now in the Town of Greenwood, County of Hennepin, State of Minnesota, in possession of the undersigned."

The evidence showed that there were only four other farms in the section named in the mortgage, all having been owner-occupied for many years, and that none was occupied by anyone named Dixon except the farm in question. The description of the property being such that a prudent, disinterested person, aided and directed by such inquiries as the instrument suggested, would be

able to identify the property, was sufficiently definite. Helgeson v. Farmers Co-op. Assn. 160 Minn. 109, 199 N. W. 821.

The tenant at the time of the execution of the mortgage, and continuously for more than 17 years immediately prior thereto, had lived on the farm described. On or about June 20, 1939, he disappeared from his home and has not been heard from since. The farm operations were thereafter continued by one Weller, his hired man, whom the trial court found had been left in charge.

The testator had acquired ownership of the farm about 1931 and at about the same time went to live thereon with the tenant and so continued until the former's death in December 1937. The testator was an invalid and unable to operate the farm. He left a will devising the farm to the minor children of the tenant.

There was no evidence of any written lease or agreement of any kind between the tenant and the testator or any prior owner of the farm. The tenant owned the horses, cattle, and machinery and furnished the seed from year to year. He asserted full ownership of the crops to be grown in 1939 by executing the chattel mortgage thereon to the bank.

Margaret Gallagher was appointed executrix and qualified as such on January 11, 1938. After her appointment the tenant continued to live on and operate the testator's farm the same as in prior years without any new agreement or discussion with the executrix or the minors as to the terms of his tenancy. The minors continued living with their father. Weller, who had been working for the tenant as a hired man since 1936, continued to work as such until late in 1939.

The tenant did the fall plowing in 1938 and all the spring work in 1939, including plowing and seeding, and furnished the seed for that year. He continued farming the premises until the date of his disappearance. Thereafter, as stated, his hired man continued to take care of the farm.

After the tenant's disappearance, the bank, deeming itself insecure, commenced this action to gain possession of the mortgaged property incident to the foreclosure of its chattel mortgage. The

property was not removed in the interim between the seizure and the foreclosure sale on August 28, 1939, but was cared for by Weller on the farm. At the foreclosure sale the bank bought all of the mortgaged chattels, including the crops, and on the following day sold the same to Weller.

The evidence justified the finding below that Robert J. Dixon was a tenant of the testator at the time of the latter's death and thereafter "a tenant at will holding over of * * * the executrix." In fact, this was the only reasonable inference from the testimony.

The tenancy up to the time of testator's death was what is commonly known as a tenancy from year to year, which except as to the statutory requirements of notice to quit, is substantially a tenancy at will.[2] "A tenant from year to year has a lease for a year certain, with a growing interest during every year thereafter, springing out of the original contract, and parcel of it. Such an estate is not determined by the death of either lessor or lessee." Hunter v. Frost, 47 Minn. 1, 5, 49 N. W. 327; 4 Dunnell, Dig. § 5378. Where the tenancy is from year to year, the notice to quit must terminate with a year, although the length of it may now be three months instead of the six months as formerly required at common law. Minn. St. 1941, § 504.06 (Mason St. 1927, § 8191); 2 Tiffany, Landlord and Tenant, pp. 1427, 1446, 1450, §§ 196, 200; Hunter v. Frost, 47 Minn. 1, 49 N. W. 327, *supra.*

The proof is indefinite as to whether the term of the year-to-year tenancy here involved began and ended in the spring or fall of the

---

[2]"The manner in which the terms 'tenant for years' and 'from year to year' have been handed down to us, has somewhat obscured the present meaning of those terms. Thus Blackstone says: 'If the leave be but for half a year, or a quarter, or any less time, this lessee is respected as a tenant for years, and is styled so in some legal proceedings; a year being the shortest term which the law in this case takes notice of' (2 Blacks. Comm. 140). But the term tenant 'from year to year' owes its origin to the disposition of the courts to convert tenancies at will into tenancies 'from year to year,' wherever an annual rent was reserved, or circumstances appeared from which an annual holding might be implied. The precariousness of a holding terminable at will, induced this liberal construction." 1 McAdam, Landlord and Tenant (5 ed.) p. 135.

year. In this state there is no uniform practice respecting farm leases, and we cannot resort to judicial notice to settle that question as between the parties. We will, however, take judicial notice of the fact that farm leases do not terminate in the summer months while the crops are still unharvested, but in the spring or fall. The omission in the proof as to the exact beginning and ending of the annual term is not material here because there was no notice to quit, and the disappearance of the mortgagor-lessee, the seizure of his grain, and the use of the premises by the bank all transpired in the summer months.

The tenancy which existed in 1937, not having been determined by the owner's death in December 1937, continued into 1938. Upon the owner's death the title to the real estate passed immediately to his devisees, the minor defendants, by operation of law and without a decree of court, subject to the right of the executor to possession thereof for the purposes of administration, Minn. St. 1941, § 525.34 (Mason St. 1940 Supp. § 8992-89) ; 2 Dunnell, Dig. & Supp. § 2722; Lewon v. Heath, 53 Neb. 707, 74 N. W. 274; and subject, of course, to the rights of the tenant in possession.

No notice to quit having been given the lessee in 1938, the tenancy continued into 1939 and, absent any notice to quit during that year, would have continued into 1940 except for the abandonment of the premises by the mortgagor in 1939. When that abandonment occurred—whether at the time of the lessee's disappearance in June 1939 or at the time his hired man, Weller, quit farming operations—was a question of fact determined by the trial court as follows:

"* * * in June, 1939, the said mortgagor disappeared leaving the said farm in charge of his hired man, Richard S. Weller, who remained in possession of said farm until November, 1939; that the tenancy held by said mortgagor was not terminated until the said premises were abandoned by his said hired man in November, 1939."

The trial court, on sufficient evidence, having found no abandonment until November 1939, the lessee was rightfully in possession

of the premises when the sheriff seized the mortgaged crops and other personal property on August 1, 1939, and during the entire period ensuing between the seizure and the foreclosure sale on August 28, 1939. Under the terms of its chattel mortgage, the bank had a right to enter on the leasehold "and do all that is necessary to properly put in, harvest, thresh and market such crops." Furthermore, whatever the bank did was done with the consent of Weller, the hired man left in charge of the farm by the tenant. There was, therefore, no conversion of the grain or wrongful entry upon or occupation of the real estate by the bank unless the owner or his representative had a lien on the crops superior to that of the bank.

In the absence of contract or statute, a landlord has no lien upon any property of his tenant as security for rent. And where, in case of farm lands, the relation is that of landlord and tenant as distinguished from that of cropper, the title to the growing crops is in the tenant free from any lien for rent. 32 Am. Jur., Landlord and Tenant, p. 461, § 564; 36 C. J. p. 479, § 1408. This follows from the rule that *fructus industriales* are regarded as personalty, whether separated from the soil or not. 2 Dunnell, Dig. & Supp. § 2508. The tenant, as owner of the crops, may remove the crops even after entry of judgment in ejectment against him. Bloemendal v. Albrecht, 79 Minn. 304, 82 N. W. 585.

This case is distinguishable from Graceville State Bank v. Hofschild, 166 Minn. 58, 206 N. W. 948, where the mortgagor was lawfully dispossessed on May 31, and at that time, or before, unequivocally abandoned the farm while the crop was standing. Here the court found the tenant still to be in possession by an agent at the time of the seizure of the crops.

There being no showing of the creation of any lien, either orally or in writing, in favor of the landlord as against the bank, we cannot supply one. The fact that the owners were minors and the tenant their father does not alter the general rule. Nor are there any equities present which would suggest an exception to this rule in their favor as against the bank, which made no profit on the

foreclosure sale but realized only the amount of cash advanced by it to the tenant in good faith scarcely six months before the foreclosure.

It follows that the trial court's order denying a new trial must be affirmed.

