**SPIRITWOOD GRAIN CO. et al. v. NORTH-
ERN PAC. RY. CO.**

No. 14009.

United States Court of Appeals
Eighth Circuit.

Jan. 17, 1950.

Murray & Murray, Bismarck, N. D., and Heineke & Conklin, Chicago, Ill., for appellants.

Conmy & Conmy, Fargo, N. D., for appellee.

Before GARDNER, Chief Judge, and THOMAS and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

The Spiritwood Grain Company owned a grain elevator located on ground leased from the Northern Pacific Railway Company at its station at Spiritwood, North Dakota. The elevator and its contents were destroyed by fire on September 26, 1948. The property destroyed was insured by Millers National Insurance Company. Suit was brought by the Grain Company against the Railway Company to recover the loss on the ground that the fire was negligently spread by one of the Railway Company's steam locomotives. The Insurance Company having paid the loss joined as party plaintiff under its right of subrogation.

In its answer the Railway Company denied that the fire spread from its locomotive and alleged exemption from liability by reason of an exemption clause in the lease.

At the conclusion of plaintiffs' testimony the defendant moved for directed verdict on the grounds (1) that the undisputed evidence showed that it was not liable for the damages sustained by plaintiffs because the exemption clause in its lease covered the destruction of the property by fire, and (2) because the evidence was insufficient to support a verdict that the property was "burned and destroyed because of willful, wanton or gross negligence."

The motion for a directed verdict was sustained by the court and judgment was entered dismissing the action on the merits with costs against the plaintiffs, and the plaintiffs have appealed.

The appellants contend in this court, as they did in the district court: 1. That the exemption from the liability clause in the lease was nullified by a statute of North Dakota; and 2. That the lease exempts the Railway Company from liability only

for buildings placed upon the premises subsequent to the date of the lease and is limited to buildings placed on the premises by the lessee only.

The lease originally entered into between Northern Pacific Railway Company, lessor, and Russell-Miller Milling Company, lessee, was executed August 27, 1938, "effective as of August 1, 1937." The elevator was on the premises at that time. By its terms the lessor let the premises described to the lessee "To Have and to Hold subject to the provisions following and until this lease is terminated as hereinafter provided: * * *."

The lease provided that "Without the written consent of the Railway Company the lessee shall not assign this lease or any interest therein. * * *"

On June 22, 1942, the Russell-Miller Milling Co., lessee, assigned to Dunwell Brothers; written consent thereto was given by the Railway Company on April 19, 1944.

On June 4, 1945, Dunwell Brothers assigned the lease to the appellant, Spiritwood Grain Company, and the written consent of the Railway Company was given thereto on July 10, 1945.

The written lease. fixed no date for its termination. But paragraph 11 provided that "The Railway Company may also, without assigning any reason therefor terminate this lease at any time upon six months' written notice * * *." And paragraph 14 provided that "The lessee may terminate this lease by giving thirty days' notice in writing * * *." It was provided further that as annual rental the lessee would pay in advance $15, and all general taxes and special assessments.

Another clause provided that "the Railway Company shall have the exclusive right of carrying all grain and coal to be transported by rail to or from said premises."

Paragraph 7 states the right of exemption from liability relied upon by the Railway Company. It reads: "7. It is understood by the parties that the leased premises are in dangerous proximity to the tracks of the Railway Company, and that persons and property on the leased premises will be in danger of injury or destruction by fire or other causes incident to the operation of a railway, and the lessee accepts this lease subject to such dangers. It is therefore agreed, as one of the material considerations of this lease without which the same would not be granted, that the lessee assumes * * * all risk of loss, damage or destruction to buildings or contents or to any other property brought upon or in proximity to the leased premises by the lessee, or by any other person with the consent or knowledge of the lessee, without regard to whether such loss be occasioned by fire or sparks from locomotive engines or other causes incident to or arising from the movement of locomotives, * * * or to whether such loss or damage be the result of negligence or misconduct of any person in the employ or service of the Railway Company, or of defective appliances, engines or machinery. And the lessee shall save and hold harmless the Railway Company from all such damage, claims and losses."

■ Unless in violation of a controlling statute or of public policy it is generally held that a railroad company may by contract exempt itself from liability for damages to buildings or structures upon its right of way due to fires, even though such fires are due to its own negligence. Michigan Millers Mut. Fire Ins. Co. v. Canadian Northern Ry. Co., 8 Cir., 152 F.2d 292.

The statute which appellants contend nullifies the exemption clause of the lease is a part of Chapter 49-16 of the Revised Code of North Dakota 1943. The two material sections following the heading "Liability of Railroads for Negligence" read:

"49-1601. Liability of Railroad For Damages From Fire. All railroad corporations operating or running cars or engines over roads in this state shall be liable to any party aggrieved for all damages resulting from fire escaping or scattered or thrown from any such car or engine. * * *

"49-1605. Contract Exempting Railroad From Liability Void. Any contract, rule, regulation, or device whatsoever the purpose or intent of which shall be to enable

any railroad corporation to exempt itself from any liability created by this chapter to that extent shall be void. * * *"

The Railway Company contends that these sections of the Code, when properly construed, do not nullify paragraph 7 of the lease. We think this contention is without merit. However, in view of the conclusion which we have reached it will be unnecessary to discuss it.

The important contention of the Railway Company is that it has a vested right in the lease involved, including the exemptions from liability expressed in paragraph 7 thereof, supra, and that sections 49-1601 and 49-1605, supra, do not affect that right retroactively.

In support of this contention the Railway Company relies upon section 1-0230 of the Revised Code of 1943, which reads: "Vested Rights Protected. No provision contained in this code shall be so construed as to impair any vested right or valid obligation existing when it takes effect."

And section 1-0210 of the same code which reads: "Code Not Retroactive Unless So Declared. No part of this code is retroactive unless it is expressly declared to be so."

Attention is directed to the fact that the lease in question was made in 1938, and the Railway Company contends that, therefore, it was a valid existing contract obligation in 1943 when the 1943 code was adopted and that it still is an existing obligation.

The appellants' reply to the foregoing argument is that the lease of 1938 created a tenancy at will since the tenancy by the terms of the lease was of indefinite duration; that the attempted assignment of such a lease is void and results only in bringing the tenancy to an end; that when the Railway Company in this case permitted the assignee to occupy the premises on the same terms a new tenancy at will arose which was in no respect a continuance of the former tenancy. Therefore, the appellants argue, the assignment to the Grain Company of June 4, 1945, became effective by the approval of the Railway Company on July 10, 1945, and a new lease was thereby created subsequent to the operative date of the Revised Code of 1943 under which the exemption clause of the lease was void.

The Railway Company replies that the lease does not create a tenancy at will.

The statutes of North Dakota do not define a tenancy, or an estate, at will, but they require a thirty-day notice to terminate such an estate, section 47-1701, and no decision of any court of North Dakota involving such tenancy or estate has been called to our attention, and we have found none. We assume, therefore, that when such a case arises there the courts will accept and follow the weight of authority of the courts of this country.

The conception of a tenancy at will in the United States is derived from the laws of England where the original concept of such an estate arose and was gradually modified. Unfortunately we must determine the rights of the parties on this point without the aid of exhaustive briefs.

Blackstone in his Commentaries on the Laws of England (Jones edition), paraphrasing Chapter 8, section 69, of Coke on Littleton, said: "§ 196.2 Estate at will. An estate at will is where lands and tenements are let by one man to another, to have and to hold at the will of the lessor; and the tenant by force of this lease obtains possession. Such tenant hath no certain indefeasible estate, nothing that can be assigned by him to another; because the lessor may determine his will, and put him out whenever he pleases. But every estate at will is at the will of both parties, landlord and tenant; so that either of them may determine his will, and quit his connections with the other at his pleasure."

The courts of England did not favor tenancies at will, and without the benefit of statute they required a notice to quit in order to terminate such an estate.

In this country tenancies at will have been generally recognized. Such a tenancy is one made at the will of the lessor and held at the will of the lessee for an indefinite period. A statute requiring a notice to quit or a provision of the lease requiring notice of termination does not change its character. Such a lease is not

assignable, but if the lessee attempts to assign it and the owner or lessor recognizes the transferee as tenant a new tenancy at will is thereby created. The transfer in such a case is effective as against the transferor. 32 Am.Jur., Landlord and Tenant, § 321, page 294; 51 C.J.S., Landlord and Tenant, § 156 et seq.

Although under the lease in this case the duration of the tenancy is indefinite, it does not create a pure tenancy at will. Paragraph 1 provides that "As annual rental the lessee shall pay in advance the sum of fifteen and no/100 ($15.00) dollars." Such a lease creates a tenancy from year to year, which is defined as follows: "A tenancy from year to year is a form or species of tenancy at will, which also possesses many of the qualities and incidents of a term for years. It is indeterminate as to duration and may be assigned or demised." 51 C.J.S., Landlord & Tenant, § 131, page 728. It may be created by contract, as in the present case, or by implication of law as when a tenant for years holds over after the expiration of the term. "A tenancy from year to year," however created, "is comprehended in the term 'estates at will.'" Hunter v. Frost, 47 Minn. 1, 49 N.W. 327, 329, opinion by Mr. Justice Mitchell; State Bank of Loretto v. Dixon, 214 Minn. 39, 7 N.W.2d 351.

We are interested here, then, in the incidents of a lease from year to year, particularly in whether the payment of rent each year renews and extends the old lease for another year or whether it brings into existence a new lease. The lease in question was effective by its terms August 1, 1937. The annual rental was, therefore, payable in advance on August first for each succeeding year. The assignment to the Grain Company was approved by the Railway Company on July 10, 1945. If on payment of the annual rent on August 1, 1945, a new lease came into existence the exemption clause was void under the statute then in effect.

The question thus presented has been before the courts frequently. Most of the cases which we have found involving the question fall into one of two classes: first, cases like the present one where the tenancy is created by a written lease for an indefinite term but reserving an annual rental and providing in most such cases for termination upon notice by either party. The notice to terminate may be provided by statute. The second class of cases includes those year to year leases arising by implication of law. They usually arise where a lease is for a fixed period of time reserving annual rentals, and the tenant, with the acquiescence of the landlord, holds over after the expiration of the fixed term. In such case the tenancy is for year to year and may be terminated by notice at the end of any year.

Beginning at an early date in this country the tenancy in the first class of cases has been held to be continuous, and in the second the courts have held that a new lease comes into existence at the beginning of each year. As early as 1808 Chief Justice Marshall in the case of Alexander v. Harris, 4 Cranch 299, 302, 2 L.Ed. 627, stated the reason for the distinction. Referring to the case of Birch v. Wright, 1 T.R. 378, he said: "In those cases, the original terms of the lease admit of the extension which was afterwards made by consent of the parties. The lease was made for one year, and afterwards from year to year, *as long as both parties should please. The principle of continuance is introduced into the original contract,* * * * by force of which the contract should be a lease for three years. But in this case, the original contract contains no principle of continuance. It is for a limited time, and can only be extended by a new contract, either express or implied." (Emphasis supplied.) So it is in the present case. The lease was for an indefinite term with rentals payable annually until one or the other of the parties was pleased to serve a notice of termination. The "principle of continuance" was introduced into the original contract. No new contract came into existence at the beginning of any year.

The principle of the case of Alexander v. Harris, supra, has been followed by a majority of the courts of this country ever since it was so clearly stated by Chief Justice Marshall, although in some instances their conclusions have been based on differ-

ent reasoning. Gladwell v. Holcomb, 60 Ohio St. 427, 54 N.E. 473, 71 Am.St.Rep. 724; Thompson v. Baxter, 107 Minn. 122, 119 N.W. 797, 21 L.R.A.,N.S., 575; Hunter v. Frost, 47 Minn. 1, 49 N.W. 327; Scherer v. Moran, 217 Mich. 607, 187 N.W. 322; State Bank of Loretto v. Dixon, 214 Minn. 39, 7 N.W.2d 351; 32 Am.Jur., Landlord and Tenant, § 72, page 87.

Cases illustrating the second class of year to year leases in which the courts hold that a new contract, express or implied, comes into existence each year are also numerous. Peoples Trust Co. v. Oates, 4 Cir., 68 F. 2d 353; Edward Hines Lumber Co. v. American Car & Foundry Co., 7 Cir., 262 F. 757; Weber v. Powers, 213 Ill. 370, 72 N.E. 1070, 68 L.R.A. 610; Kennedy v. City of New York, 196 N.Y. 19, 89 N.E. 360, 25 L.R.A.,N.S., 847. And see 51 C.J.S., Landlord and Tenant, §§ 130 et seq., page 728.

■ We think that the weight of authority supports the conclusion expressed above although there are cases to the contrary. We hold, therefore, that the original lease is a continuing contract and a new lease did not come into existence at the beginning of each new year. It follows that the exemption clause in the lease was not rendered void by sections 49-1601 and 49-1605 of the Code of 1943.

It appears that the grain elevator destroyed by the fire of September 26, 1948, had been constructed on the leased premises several years prior to the execution of the lease in August, 1937. Other property, including grain, appears to have been brought on to the premises after the execution of the lease. The appellants contend that if the exemption from liability clause is not voided by the 1943 Code, still they are entitled to recover because the clause is limited to buildings placed upon the leased premises subsequent to the date of the lease and placed thereon by the lessee only.

In support of their contention appellants direct attention to paragraphs 3, 5 and 10 of the lease. Paragraph 3 provides that "The lessee shall construct and complete upon the premises on or before the date hereof * * * a grain elevator * *." Paragraph 5 provides in part "No building erected on the premises shall have a swinging door * * * opening toward the * * * tracks, which, when open, will restrict the clearance to less than 8 feet from the center line of * * * the nearest track." Paragraph 10 provides that "If the lessee shall fail to construct and complete the elevator ready for operation within the time above limited * * * the Railway Company may declare this lease terminated * * *."

It seems clear that the recitations in paragraphs 3, 5 and 10 of the lease are not relevant to the meaning of the exemption clause. That clause speaks for itself, and provides: " * * * It is therefore agreed, as one of the material considerations of this lease without which the same would not be granted, that the lessee assumes * * * all risk of loss, damage or destruction to buildings or contents or to any other property brought upon or in proximity to the leased premises by the lessee, or by any other person with the consent or knowledge of the lessee, without regard to whether such loss be occasioned by fire or sparks from locomotive engines * * * or in any respect from the operation of a railway * * *."

■ Ordinarily in construing a contract the language used should be given its commonly accepted meaning. In construing the language in a lease identical in form with this in Petit Grain & Potato Co. v. Northern Pac. Ry. Co., 227 Minn. 225, 35 N.W.2d 127, 130, the Supreme Court of Minnesota said: "Where, as here, the word 'or' is used in separating the members of an enumeration, its effect is disjunctive and manifests a meaning that each member is separate and distinct." The court held that the word "buildings" in the enumeration refers to any buildings on the leased premises no matter when they were constructed, whether before the lease was executed or thereafter. The court further said: "The other language confirms this meaning. The disjunctive 'or' in the phrase 'all risk of loss, damage or destruction to buildings or contents or to any other property brought upon' the premises

plainly refers disjunctively to each kind of property it separates as being distinct from the others. * * * So construed, the exemption from liability in the clause in question refers to * * * buildings on the leased premises, regardless of when they were placed there; contents of any such building; and additional and different property which might be brought upon the leased premises by the lessee or by another with his consent." So construed the exemption from liability clause included the elevator upon the leased premises when the lease was executed no matter by whom it was constructed.

Appellants rely upon Frederick v. Great Northern Ry. Co., 207 Wis. 234, 240 N.W. 387, 241 N.W. 363, 80 A.L.R. 984. We think that case is distinguishable from the present case, and that the decision, supra, of the Supreme Court of Minnesota is correct.

After the court directed a verdict for the appellee at the close of appellants' case counsel for appellee filed a verified statement of appellee's costs and disbursements containing a list of witnesses including their mileage and the number of days of attendance, and averring "that each and every item therein has been necessarily incurred in the trial of said action or is a lawfully taxable item of costs therein." Counsel for appellants thereupon filed objections "to each and every item of costs for witnesses specified in the statement of costs" on the grounds: 1. That not any of the witnesses named were called to testify nor did such witnesses testify; and 2. That at no time did appellee notify the clerk or counsel for appellants that it had these witnesses in court. Counsel for appellee then filed a counter-affidavit stating that every witness listed in the statement was in actual attendance during the trial and that each of said witnesses actually traveled the number of miles listed in the statement. The court then affirmed the taxation of costs as listed.

The appellants contend that the court erred in so ruling because the witnesses listed were not subpoenaed, did not testify, and the affidavits supporting the claim do not say that the witnesses named were subpoenaed or that they were material witnesses.

Section 1821 of the Federal Judicial Code, 28 U.S.C.A., effective September 1, 1948, provides for compensation for per diem and mileage of witnesses attending in any court of the United States. Section 1920 provides that "A judge or clerk of any court of the United States may tax as costs * * * (3) Fees and disbursements for printing and witnesses;" and § 1924 provides: "Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed."

Ordinarily the taxing of fees and mileage for witnesses in federal courts is within the sound discretion of the trial court and its decision can be reversed only for an abuse of discretion. Kirby v. United States, 9 Cir., 273 F. 391. Witness fees are taxable even though the witness attends court voluntarily and without a subpoena. The Syracuse, C.C.N.Y., 36 F. 830; Marks v. Merrill Paper Co., 7 Cir., 203 F. 16, 21. Of course, if the witness attends from out of the district, mileage can be taxed only to the extent of 100 miles. The Vernon, D.C.Mich., 36 F. 113; Street v. The Progresso, D.C.Pa., 48 F. 239. Many cases hold that, in order for fees to be taxable for witnesses who appear voluntarily and who are not called to testify, it must be shown that their testimony is material, and that in such case there is a rebuttable presumption that their testimony is not material. Federal Intermediate Credit Bank of Columbia v. Mitchell, D.C.S.C., 38 F.2d 824. The presumption is overcome, however, if it appears that an order of court or other circumstance rendered their testimony unnecessary. Simpkins v. Atchison, T. & S. F. R. Co., C.C. Mo., 61 F. 999; Treadwell v. Mutual Life Ins. Co. of New York, D.C.La., 20 F.Supp. 494. In this instance the record discloses that the order of the court sustaining ap-

pellee's motion for a directed verdict at the close of appellants' evidence rendered the testimony of all of appellee's witnesses unnecessary. Under these circumstances it cannot be said that the court abused its discretion in affirming the taxation of costs for appellee's witnesses.

The result is that the judgment appealed from must be, and it is affirmed.