232 F.2d 779
 WESTERN FIRE INSURANCE COMPANY, a corporation, and United
States Fire Insurance Company, a corporation, Appellants,
v.
MILNER HOTELS, Inc., a North Dakota corporation, Appellee.
GIRARD INSURANCE COMPANY OF PHILADELPHIA, PENNSYLVANIA, a
corporation(Intervenor), Appellant,
v.
MILNER HOTELS, Inc., a North Dakota corporation, Appellee.
 Nos. 15496, 15497.
 United States Court of Appeals Eighth Circuit.
 May 3, 1956.
 
 P. W. Lanier, Fargo, N.D. (Myron H. Bright, Lanier, Lanier & Knox, Wattam, Vogel, Vogel, Bright & Peterson, Fargo, N.D., and Clausen, Hirsch & Miller, Chicago, Ill., on the brief), for appellants.
 J. Gerald Nilles, Fargo, N.D. (Nilles, Oehlert & Nilles, Fargo, N.D., on the brief), for appellee.
 Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit judges.
 WOODROUGH, Circuit Judge.
 
 
 1
 These actions were brought against Milner Hotels, Inc. by the fire insurance companies which insured Herbert Wong against loss of his restaurant in the Earle Hotel building at 706 Front Street in Fargo, North Dakato, by fire. The fire loss occurred and the three insurance companies paid Wong the respective amounts of $10,162.50; $9,812.50 and $11,512.80. By the terms of their policies they became subrogated to Wong's rights against persons whose negligence caused the fire.
 
 
 2
 The complaints against the hotel company charged that the hotel company was the owner and operator of the Earle Hotel property and had leased a portion of the building to Herbert Wong who operated his restaurant therein under the name of Pacific Cafe. That a fire occurred on December 13, 1951, in the part of the hotel which was under the defendant's control, which fire was caused by defendant's negligence and spread throughout the entire building and destroyed the property and stopped the business of the cafe. That said loss was proximately caused by the negligence of defendant. Damages were prayed for in the respective sums paid by the insurance companies. The answers of defendant denied liability. The cases were consolidated for trial and the parties entered into a stipulation that Herbert Wong occupied the premises described in the complaints under and by virtue of the terms of a lease from the hotel company to him which was in words and figures as follows:
 
 
 3
 'This lease made and entered into this 15th day of February, 1951, between Milner Hotels, Inc., North Dakota Corporation, hereinafter called Lessor and Herbert Wong, hereinafter called Lessee.
 
 
 4
 'Witnesseth:
 
 
 5
 'That the Lessor does hereby lease to the Lessee the following premises, towit: Restaurant and Dining Room, Earle Hotel, Fargo, North Dakota, to be used and occupied only for Restaurant and Dining Room for a term of 5 years, commencing February 15, 1951, and ending February 15, 1956, with a 5 year option.
 
 
 6
 'The Lessee agrees to pay to the Lessor for rent for the herein demised premises the sum of $175.00 per month, payable monthly in advance on the first day of each and every month. Lessee agrees to pay the first and last months' rent upon signing the lease.
 
 
 7
 'As a consideration of this lease the Lessee agrees to paint and decorate the interior of the store at his expense.
 
 
 8
 'The Lessee agrees that it will keep the premises in a clean, sanitary condition during the term of this lease and that it will not use the same for any illegal purpose and will keep the premises in good repair, and in accordance with all Public Authority demands and will not make any changes, alterations, or additions without the written consent of the Lessor.
 
 
 9
 'This lease is made with the distinct understanding that Lessor shall not be held responsible for anything that may happen in connection with the operation of the herein demised premises.
 
 
 10
 'Lessee agrees to save the Lessor harmless from and all expense or claim for damages arising out of the use and/or operation of the herein demised premises, including water damage.
 
 
 11
 'Lessee will furnish his own electricity, gas and water. Lessor will furnish heat as heat is provided in the hotel, but shall not be responsible for failure to supply heat.
 
 
 12
 'Lessee agrees that his operation of the demised premises will in no way interfere with the operation of the hotel, and if at any time it should interfere with the operation of the hotel, Lessor shall have the privilege of cancelling this lease.
 
 
 13
 'Upon the termination of this lease, the Lessee agrees to return to Lessor all of the property belonging to the Lessor in the demised premises in as good condition as it is now.
 
 
 14
 'It is mutually understood and agreed that this is a sublease and is subject to all of the terms and conditions of the principal lease.
 
 
 15
 'Lessee agrees that during the term of this lease, it will carry public liability insurance in the limits of $10,000.00 and $20,000.00 and workmen's compensation insurance; that they at all times during the period of this lease will serve, protect and keep harmless said Lessor and premises from every loss, liability for loss, damage, costs, and expenses whatsoever which may arise from or be claimed against Lessor or the leased premises by any person or persons arising out of the operation, use or condition of said premises or improvements.
 
 
 16
 'It is mutually understood and agreed that this is a sublease and cannot be sublet, assigned, transferred, or conveyed to any other party.
 
 
 17
 'In the event Lessee does anything that raises the insurance rate on the building, this lease is automatically cancelled and terminated upon our option, without notice. If not cancelled, the Lessee will pay such increased insurance rate.
 
 
 18
 'In the event the Lessee shall become bankrupt or shall make a voluntary assignment for the benefit or creditors, or in the event that a Receiver is appointed, then at the option of the Lessor, and upon five (5) days notice to the Lessee of the exercise of such option, this lease shall cease and come to an end.
 
 
 19
 'In the event the Lessee shall neglect or fail to perform and observe any of the covenants contained in this lease on the part of the Lessee to be performed, the Lessor lawfully may enter into and upon the said premises and repossess the same as of the former estate and expel the said Lessee and remove his effects (forcibly if necessary) without being taken or deemed guilty of any manner of trespass and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant and that upon said entry as aforesaid, the said term shall cease and be ended.'
 
 
 20
 The defendant moved in each of the cases for summary judgment on the ground that the stipulation, pleadings and all records and file in said actions show the defendant to be entitled to judgment as matter of law.
 
 
 21
 The Court found on consideration of the pleadings and the stipulation that there was no genuine issue as to any material fact and that defendant was entitled to judgment as matter of law. The judgment of dismissal was supported by memorandum opinion setting out the reasoning of the court in arriving at its decision. It shows that the court recognized that upon payment of Wong's fire loss the insurance companies became entitled by subrogation to whatever rights Wong had against any tortfeasor whose negligence caused the loss. But it declared that 'where an insured tenant has by lease agreed that his landlord shall not be liable on any claim of the tenant, the insurance company will have no right against the landlord by subrogation because the tenant has no right.'
 
 
 22
 The Court observed that 'the provisions in the instant lease do not expressly exempt the defendant (landlord) from liability for its own negligence' but it was of the opinion that 'they clearly comprehended negligence' and it declared 'the tenant agreed to exempt and save defendant harmless from any liability for loss, damage, costs and expenses whatsoever which might arise from or be claimed against defendant or the leased premises by any person in connection with the operation, use or condition of the premises.' The Court stated it found 'this agreement' in the following three provisions of the lease:
 
 
 23
 'This lease is made with the distinct understanding that Lessor shall not be held responsible for anything that may happen in connection with the operation of the herein demised premises.'
 
 
 24
 'Lessee agrees to save the Lessor harmless from any and all expenses or claim for damages arising out of the use and/or operation of the herein demised premises, including water damage.'
 
 
 25
 'Lessee agree that * * * at all times during the period of this lease (he) will serve, protect and keep harmless said Lessor and premises from every less, liability for loss, damage, costs and expenses whatsoever which may arise from or be claimed against Lessor or the leased premises by any person or persons arising out of the operation, use or condition of said premises or improvements.'
 
 
 26
 The Court concluded that 'the exemption and indemnity provisions of the lease in the present actions are valid and effective to defeat all liability of the defendant to the plaintiffs for negligence.'
 
 
 27
 On this appeal the insurance companies recognize that if the lease under which their insured Herbert Wong was holding contained any provision whereby he agreed to save the defendant lessor harmless from damage which the defendant landlord might cause him through its negligence, the judgment should stand.
 
 
 28
 But they insist that none of the provisions of the lease relied on by the trial court constitutes such an agreement. Bearing in mind that the event causing the loss of Wong's property is alleged in the complaints to be the fire started by defendant's negligence on its own premises, we turn to consider the first lease provision relied on:
 
 
 29
 'This lease is made with the distinct understanding that lessor shall not be held responsible for anything that may happen in connection with the operation of the demised premises.'
 
 
 30
 'Anything that may happen' is a broad phrase and was, of course, intended to have broad coverage, but its coverage is expressly limited to happenings 'in connection with the operation of the demised premises'. The complaints do not charge that Wong was damaged by any happenings connected with that operation. The negligence of defendant in starting the fire occurred on its own premises and though it caused destruction of the cafe and stoppage of its business, the negligence was not in any fair sense anything that happened 'in connection with the cafe operation.'
 
 
 31
 Turning to the next provision of the lease the court relied on, it reads:
 
 
 32
 'Lessee agrees to save lessor harmless from any and all expense or claims for damages arising out of the use and/or operation of the demised premises, including water damage.'
 
 
 33
 The words of this provision 'save lessor harmless from all claim for damages' are also broad taken by themselves. But the claims for damages for which the lessor is to be saved harmless are specifically limited to such as arise out of 'the use and operation of the demised premises.' That use and operation was confined to Wong and if he had been negligent in respect to it he would have been answerable. But the provision does not contain any agreement by Wong to exempt the defendant from liability for the negligence of which it is guilty on its own premises.
 
 
 34
 The third provision of the lease relied on is substantially repetition of the other two that have been set out and considered. The agreement there contained, exactly as in the other two provisions, is explicitly limited to less, damage, costs and expenses 'arising out of the operation, use or condition' 'of the demised premises.'
 
 
 35
 Each of the three provisions of the lease relied on deals exclusively with consequences that may result from something the tenant may do or fail to do in his operation, use or (maintenance of) condition of the premises demised to him. He did not in any of the provisions agree to save his landlord harmless in the event the landlord negligently caused destruction of his property. And there was no agreement in either of the provisions to save the landlord harmless from any damage arising from the proximity of the demised premises to the hotel property.
 
 
 36
 The court's finding that 'Although lease provisions in the instant case do not expressly exempt the defendant from liability for its own negligence, they clearly comprehend negligence' must be taken to mean that the court considered an agreement for the exemption of the hotel company for its negligence could be inferred from reading the provisions together.
 
 
 37
 In this regard we do not find that the meaning of either of the provisions is affected by reading it in connection with the other. Neither one alone nor all together present any agreement that the landlord shall be exempt from liability if its negligence sets the tenant's property on fire.
 
 
 38
 The third provision, as well as the two others relied on, did manifestly serve a useful purpose in the lease to mark off the separateness of the landlord's business and the tenant's business. Both were in the same building and the hotel company doubtless intended to lodge in the hotel the same guests that Wong intended to feed in the 'Restaurant and Dining Room' described in the lease. The lease provisions in issue make it clear that whatever inferences to the contrary one might draw from appearances, the tenant's business was entirely independent of the landlord's, and the tenant was made responsible for his operation, use and condition of the demised premises and for whatever his operations caused to happen therein. Each of the three provisions of the lease repeat that clear and definite agreement of the parties.
 
 
 39
 The Court have had frequent occasion to consider contracts between landlord and tenant saving the landlord harmless on account of its negligent firing of the tenant's property. A form of such a contract was before us in Spiritwood Grain Co. v. Northern Pac. Ry. Co., 8 Cir., 179 F.2d 338, 340. The provision prescribing the exemption read as follows:
 
 
 40
 'It is understood by the parties that the leased premises are in dangerous proximity to the tracks of the Railway Company, and that persons and property on the leased premises will be in danger of injury or destruction by fire or other causes incident to the operation of a railway, and the lessee accepts this lease subject to such dangers. It is therefore agreed, as one of the material considerations of this lease without which the same would not be granted, that the lessee assumes * * * all risk of loss, damage or destruction to buildings or contents or to any other property brought upon or in proximity to the leased premises by the lessee, or by any other person with the consent and knowledge of the lessee, without regard to whether such loss be occasioned by fire or sparks from locomotive engines or other causes incident to or arising from the movement of locomotives, * * * or to whether such loss or damage be the result of negligence or misconduct of any person in the employ or service of the Railway Company, or of defective appliances, engines or machinery. And the lessee shall save and hold harmless the Railway Company from all such damage, claims and losses.'
 
 
 41
 We think that the provisions of the lease in these cases cannot by any force of construction be held to be the equivalent in force and effect to the foregoing. The numerous cases cited in the trial court's opinion have been considered but we find none to support it. Whether Wong would have been willing to agree to exempt the hotel company from liability for negligence in order to get his lease, it is plain on the face of it that he did not so agree.
 
 
 42
 The appellee cites the following cases as tending to support the judgment: Commercial Union Assurance Co. v. Foley Bros., 141 Minn. 258, 169 N.W. 793, where the lease provision recited that the lessor would not be liable for any loss or damage to any property at or within the leased premises occasioned by fire no matter how caused; Wright v. Sterling Land Co., Inc., 1945, 157 Pa.Super. 625, 43 A.2d 614, where the lease under consideration contained the provision that "the management * * * will not be responsible for loss or damage to cars or their contents from any cause whatsoever" (plaintiff's automobile was stolen as a result of the lessor's negligence); Cannon v. Bresch, 1932, 307 Pa. 31, 160 A. 595, 596, where the lease contained the following wording: "* * * said lessee does hereby release and discharge said lessor, * * *, from any and all liability for damage that may result from the bursting, stoppage, and leakage of any water pipe, steam pipe, gas pipe, sewer, basin, water closet and drain, and from all liability for any and all damage caused by water, gas, waste and contents of said water pipes, gas pipes, steam heat pipes, sewers, basins, water closets and drains." (tenant's stock in trade and fixtures on the leased premises were destroyed and damaged as a result of bursting of water pipes in an area over which the landlord retained control); King v. Smith, 1933, 47 Ga.App. 360, 170 S.E. 546, 547, where the following lease provision was under consideration; "All personal property placed in the premises * * * shall be at the risk of the lessee or owner, and lessor shall not be liable for any damage to said personal property, or to lessee, arising from the bursting or leaking of water or steam pipes, or from any act of negligence of any cotenant or occupants of the building or of any other person whomsoever" (lessee's property was damaged because of a loose and defective valve in a steam pipe on the leased premises); Lerner v. Heicklen, 89 Pa.Super. 234, where a covenant in the lease relieved the landlord from all loss of property 'however occurring.' On consideration of the facts in the above relied on cases, it is evident that they have no application and are plainly distinguishable from the instant cases. Nor have we found any case where verbiage like we have here has been held to save the landlord harmless from damage he has negligently inflicted upon the tenant.
 
 
 43
 The judgment is reversed and the cases are remanded for trial.