56 So.2d 518 (1951)
DE LOTTO
v.
FENNELL et ux.
Supreme Court of Florida, Special Division A.
December 14, 1951.
On Rehearing February 5, 1952.
W. Marion Hendry and Edward I. Cutler, Tampa, for appellant.
J.D. Hobbs, Jr., Tampa, for appellees.
CHAPMAN, Justice.
It appears by the record in this cause that plaintiff-appellant, DeLotto, a building contractor, repaired and remodeled the home of the Fennells, defendants-appellees. The appellant contends that he entered into a verbal agreement with the Fennells to repair and remodel their dwelling on the basis of a cost-price arrangement plus 10% for his fee as a general contractor. It was the contention of the defendants-appellees that the plaintiff submitted a verbal bid to repair and remodel the dwelling in question at a fixed sum not to exceed $4,800.00, inclusive of the contractor's fee. The parties never reduced their agreement to writing.
The plaintiff-appellant completed the project and, according to his version of the construction agreement, submitted to the owners a statement of the total costs of the construction which amounted to the sum of $6,790.82, inclusive of contractor's fee for the construction. It was the appellees' view and contention that they were due the plaintiff for this construction the sum of $4,800.00 and they were not under any legal or moral obligation to pay the excess sum of $1,990.82 claimed by the plaintiff.
The plaintiff filed his amended bill of complaint in the lower Court and prayed for an accounting between the parties; that a lien be decreed against the property for the amount of the lien; and that the property be sold to satisfy the balance due on the asserted lien in the total sum of $1,990.82. Attached to the bill of complaint is plaintiff's Exhibit "A" (Tr. A6-8), being an itemized statement of the costs of labor and services, building material, brickwork, painting, plumbing, etc., going into the building. An answer was filed by the defendants in which it was admitted that the completed job by the plaintiff was extremely satisfactory in all respects except the costs thereof, which, according to their view, were not to exceed $4,800.00 and accordingly they should not be required to pay the additional sum of $1,990.82.
The cause was referred to a Special Master with directions to hear all the witnesses of the parties and receive such other evidence as was offered and to report to the Chancellor his findings of fact and recommendations as to a decree. Pursuant to the order of reference a hearing or hearings were had, the plaintiff testified as to his *519 understanding of the contract, while Mrs. Fennell gave testimony as to her understanding with the plaintiff under which the repairs and remodeling were performed. As the writer construes the testimony, the reasonable costs of the project exceeded the sum of $4,800.00. Some of the work was done by sub-contractors and after the contractors tore into the building it was found that a considerable portion of the material was infested with termites. This rotten material had to be replaced.
As work on the building progressed the owners requested changes from the original plans which required extra costs not considered nor contemplated by the parties when the figure of $4,800.00 was agreed upon. The extras consisted of plumbing, replacement of rotten and termite infested material, rearrangement of floor plans, a new dormer gable roof and other items. The Special Master hearing the testimony reached the conclusion "that the plaintiff undertook the repair or remodeling of the dwelling upon an estimated" sum rather than on a stipulated sum of $4,800.00. He recommended the entry of a final decree by the Chancellor for the plaintiff-appellant for the balance due in the sum of $1,990.82.
Exceptions were filed to the Special Master's report and the Chancellor, after hearing argument, sustained the exceptions thereto and entered a decree for the defendants-appellees. The plaintiff appealed. The defendant, Mrs. Fennell, testified in her own behalf and produced William C. Owen, a contractor, as a witness. (Tr. 237-290.) The contractor was interrogated as to the several items which plaintiff testified that went into the repair and remodeling of the building and stated that the reasonable costs approximated $5,500.00, less a contractor's fee. It is true the witness Owen could not testify as to the costs of the materials nor the labor going into the building. The costs of labor and material necessary to repair the termite losses were unknown to the witness. The expert witness Owen produced by the defendants-appellees estimated the total costs of the repairs and remodeling going into the building as made by the plaintiff at a sum in excess of $4,800.00, as claimed by the appellees. The appellees simply closed their eyes as to the costs of the extras ordered by them after the construction began.
The final decree challenges the accuracy of the time record of workmen assigned on the Fennell project. The Special Master apparently had no difficulty with this item. It is not disputed that a graduate engineer by the name of Lloyd D. Cummings supervised the construction work and testified that the time recited on the cards or record was accurately stated. It appears that the workmen on this job were old and reliable employees of the appellant.
"Q. Do you have any reason to believe that any of the statements of time given you by your employees on this particular were dishonest? A. No sir. If I had, they would not be presented here, because I would find out and make the corrections there. I wouldn't wait until here to make the corrections.
"Q. When Mr. Cummings, who, I understand, was more or less the superintendent on this job, was more or less the superintendent on this job, when he was on the job  A. Yes.
"Q. When he was there did he verify the amount of time put in by each laborer and mechanic? A. He verified it there and he verified it on his time distribution when he made the distribution at the end of the week, double-checking it.

* * * * * *
"Q. Who keeps control of these cards during the course of the week, the cards for that particular week? A. Every man has a card.
"Q. Does he keep it in his own possession? A. He keeps it in his own possession and we check him daily.
"Q. You check his card daily? A. Yes.
"Q. When you check it  when you say you check it, you mean that you check it personally or the superintendent? A. Either the superintendent or myself, and in a lot of cases we both check it, but invariably they are checked.
"Q. Were each of these checked? A. Yes sir.
*520 "Q. In each of these instances? A. Yes sir."
When parties enter into an agreement or contract for construction work and during the progress thereof alterations or changes are requested in the form of extras and otherwise, then the law implies an obligation to pay the reasonable costs thereof in addition to the stipulated sum named by the parties in the original agreement. Appellant's brief recites that at the final hearing they requested that the cause be re-referred and an opportunity be given to bring before the Special Master the plaintiff's workmen assigned to and who worked upon the project and whose testimony, it is contended, would fully sustain the accuracy of the time record adduced in evidence and thereby remove all uncertainties incident thereto.
The decree appealed from is affirmed.
SEBRING, C.J., and TERRELL and THOMAS, JJ., concur.

On Rehearing
PER CURIAM.
Affirmed.
SEBRING, C.J., and TERRELL, CHAPMAN and THOMAS, JJ., concur.