**TRINITY BUILDERS, INC., Plaintiff and Respondent,**

v.

**John G. SCHAFF and Pauline Schaff, Defendants and Appellants.**

Civ. No. 8824.

Supreme Court of North Dakota.

July 27, 1972.

Vogel, Bair & Brown, Mandan, for plaintiff and respondent.

William C. Kelsch, Mandan, for defendants and appellants.

STRUTZ, Chief Justice.

The plaintiff is a family corporation, engaged in the building-construction trade, and William Helbling is its principal owner and its only full-time employee. The defendants are a retired farm couple who own a small home in Mandan which they decided needed some remodeling. It is undisputed that the defendant John Schaff contacted Helbling and asked for an estimate or bid to do the remodeling, which was to consist of tearing down a porch and putting a bathroom in its place, building a new entry and front porch, refitting the storm windows, cutting out a curb and putting in a sidewalk, and erecting a new garage.

After giving due consideration to the work to be done, Helbling submitted an estimate of the amounts which he would charge for these projects. There is a direct conflict in the evidence as to the sums for which the plaintiff agreed to do this work. The bids were oral, and Helbling testified that he bid $2,900 for remodeling the house and $1,490 for building the garage. The defendant John Schaff, on the other hand, testified that the plaintiff's bids had been $2,000 for doing the remodeling and $1,400 for building the garage.

The parties are agreed that in addition to the work for which the plaintiff had submitted bids, some extras were requested by the defendants and were performed by the plaintiff, but they are in disagreement as to what these extras were and what portion of the work done by the plaintiff was done on the remodeling job for which it had

submitted its bid. They are further agreed that the defendant paid the sum of $2,000 on the amount due.

The court made certain reductions in the sums demanded by the plaintiff for extras, as, for example, an amount claimed by the plaintiff for painting and a sum claimed for installing a heating system, the court asserting that installing a heating system and painting ordinarily are considered a part of the work of remodeling a house. The court also made a reduction of $150 in the amount which the plaintiff claimed for erecting a garage, because the garage which the plaintiff did build was two feet shorter than the garage it had contracted to erect. The court found the sums which the plaintiff had bid for these projects to be $2,900 for remodeling and $1,490 for building the garage, as testified to by the plaintiff. The court also found that the plaintiff was entitled to recover for numerous extras claimed to have been made at the request of the defendant.

After crediting the defendants with reductions as set forth above, and further crediting the $2,000 payment which the parties agree was made, the court ordered judgment in favor of the plaintiff in the sum of $3,659.49, with interest on such sum from December 23, 1970, to December 10, 1971, plus costs and disbursements. The court further ordered that the plaintiff have a lien on the property described in the complaint for the sum due, and ordered that such lien be foreclosed as provided by law.

From the judgment entered, the defendants have taken this appeal, asserting that the evidence is insufficient to sustain the decision of the court, and listing a number of errors of law which the trial court is alleged to have committed in the course of the trial.

■ The defendants strenuously assert that the amounts which the plaintiff bid were $2,000 for remodeling, instead of $2,900, as testified to by Helbling, and $1,400 for building the garage, instead of $1,490, which Helbling claims. They further urge that Helbling, who is the owner of all but a few qualifying shares of stock in the plaintiff corporation, is a man of many years' experience in the construction field and that he should have put his bids in writing; and that the court therefore should hold a professional builder to a higher standard than would be expected of unknowledgeable, trusting, and inexperienced consumers such as the defendants. This argument might have some weight if it were made to a jury, but it is meaningless when made to an appellate court. In this case, there is a direct conflict in the testimony of the parties as to the amount of the plaintiff's bids. The trial court heard the witnesses, saw their demeanor on the stand, and concluded that the bids were $2,900 for remodeling and $1,490 for constructing the garage. Since the repeal of our de novo statute (Chapter 311 of the 1971 Session Laws), an appeal from a decision of a trial court in a case tried without a jury, alleging insufficiency of the evidence to sustain the decision of the court, no longer is triable de novo. The trial court's findings now are given the same standing and effect as are the findings of a jury.

■ Thus, where the evidence is conflicting and there is substantial evidence to support the trial court's findings, such findings will be conclusive on appeal, the same as they are in an appeal from the verdict of a jury. Fox v. Bellon, 136 N.W.2d 134 (N.D.1965); Ternes v. Farmers Union Central Exchange, 144 N.W.2d 386 (N.D. 1966); Holten v. Amsden, 161 N.W.2d 478 (N.D.1968); Tennyson v. Bandle, 181 N.W. 2d 687 (N.D.1970).

■ The trial court in this case found that the plaintiff had submitted a bid for remodeling the home in the sum of $2,900 and a bid for building the garage in the sum of $1,490. From this latter amount, the court did deduct $150 for the reduction in size of the garage from twenty-four feet in length to twenty-two feet in length. These findings therefore are affirmed.

The next issue for this court to determine on this appeal is what extras, if any, were performed by the plaintiff at the specific request of the defendants, and the value of such extras. There is serious dispute as to what were extras and what part of the work done by the plaintiff was actually a part of the projects for which the plaintiff had submitted its bids.

■ A contractor may recover the reasonable value of extra work which is necessary because of material changes made in the contract at the request of the owner. Henderson Bridge Co. v. McGrath, 134 U. S. 260, 10 S.Ct. 730, 33 L.Ed. 934 (1890); Allied Mills, Inc. v. St. John, 275 Ala. 69, 152 So.2d 133 (1963).

■ An "extra," in connection with a building contract, means work arising outside of and independent of the original contract, and work which is not required in the performance thereof. Frank T. Hickey, Inc. v. Los Angeles Jewish Community Council, 128 Cal.App.2d 676, 276 P.2d 52 (1954).

■ Thus "extra work," as used in connection with building contracts, means work which arises outside of and independent of the original contract; that is, something not required in the performance of the original contract, not contemplated by the parties, and not controlled by the terms of such contract. C. F. Bolster Co. v. J. C. Boespflug Construction Co., 330 P.2d 831 (Cal.1958).

■ Where a construction contract calls for a flat sum, the contractor can recover from the owners only for extra work not contemplated by the original contract. Baylot v. Habeeb, 245 Miss. 439, 149 So.2d 847 (1963).

■ When parties enter into a building contract, and, during the progress of construction, alternates and changes are requested by the owner, the law implies an obligation on the part of the owner to pay the reasonable cost thereof in addition to the sums to be paid under the original contract. De Lotto v. Fennell, 56 So.2d 518 (Fla.1952).

■ "Extra work," for which a contractor is entitled to charge additional compensation, depends on the construction of the original contract, and generally means only labor and materials not contemplated by or embraced in the terms of the original contract. 17A C.J.S. Contracts § 371(6), p. 410. Thus what constitutes "extra work," for which a builder is entitled to extra compensation, depends on the construction of the original contract. A builder can recover from the owner whatever he can show, by competent evidence, to be an extra furnished at the owner's specific request. Olbert v. Ede, 38 Wis.2d 240, 156 N.W.2d 422 (1968).

■ In the case before us, the plaintiff submitted bids for the remodeling of the home and for construction of the garage. All the work which was reasonably necessary in the performance of these projects would be covered by the payment of the sums for which the plaintiff had agreed to perform such construction. The plaintiff had the burden of proving, by a preponderance of the evidence, that the work which it claims to be extra was not covered by the bids submitted by it. Such extras must be proved, either by showing the reasonable value of the extras or by showing the value of the work and materials going into the extras, plus a reasonable profit. Rebisso, Inc. v. Frick, 159 Ohio St. 449, 112 N.E.2d 651 (1953).

The plaintiff, Trinity Builders, in proving its case for extras, introduced all of its labor bills, to which it added fifty per cent for profit, and its total bills for materials, plumbing and heating, masonry, and all other bills claimed to have been incurred in the performance of its work for the defendants, to which total it further added a certain per cent for overhead. From the total amount so arrived at by such computation, it deducted the amounts which the plaintiff had bid on

the two projects, less the sum of $2,000 which had been paid by the defendants on account. The balance thus reached was claimed to be the amount due the plaintiff for extras requested by the defendants. Nowhere do we find any evidence by the plaintiff, or by expert witnesses on its behalf, as to the reasonable value of the extra work performed by the plaintiff. Nor is there any evidence as to the amount of labor and materials used only for such extras. All that the plaintiff presented was evidence to prove the total labor bill for the entire project, with some addition for profit, and the total materials bill for the entire project, with further additions for overhead. It then deducted the amount of the bids which it had submitted, to determine the amount which it claimed was due for extras. Helbling was asked if the plaintiff had kept separate accounts of the time and materials used on various parts of the project, so that it might be determined how much time and materials had gone into the extras. He admitted: "Not at the time we didn't, no."

He further testified that he had figured, some months after the projects had been completed, from the time slips which each worker had kept of the time he had put in on the entire projects, how much of that time had been spent for extras. He admitted that the records kept of time and materials merely show time and materials put in on the entire projects; not how much time and how much materials were expended in carrying out the original contract and how much was used on extras. He also was asked:

"Q. And it is through this process of estimation, the best you can recall, that you arrived at these figures?

"A. Yes."

Thus any amount for extras arrived at months after the projects had been completed was based on pure speculation and guesswork. The work on both projects was completed on approximately December 23, 1970. Helbling admits that the first time he even thought about trying to figure how much time the various workmen had spent on the portions of the job for which bids had been submitted and how much time had been spent on the extras was after June of 1971, more than six months after the entire projects had been completed. The time slips which had been prepared by the various workers do not disclose the time spent on various phases of the job, but only the time which the particular worker spent on any portion of the Schaff job, whether on remodeling the house or building the garage or on the claimed extras. Helbling further was asked:

"Q. None of the persons attempted to write down on the time slips the time they spent on a particular job?"

His answer was:

"A. No, they usually didn't do that."

Thus the plaintiff's entire case for extras is based not only upon disputed items claimed as extras but upon the plaintiff's guess and estimate, six months after the entire job had been completed, of how much time and materials had been put into such extras. This is not the kind of evidence on which a party can successfully assert a claim for extras.

■ We find, from the above evidence, that the plaintiff has failed to establish the reasonable value of its claimed extras. Much of the work for claimed extras was work actually falling within the original contract. The plaintiff did not prove the reasonable value of work which might be considered extras, nor did it prove the cost of materials and labor which went into them, since it did not keep any account of them. The defendant John Schaff has admitted that the new door and lock were extras, as was the door on the crawl space under the house. We find that tree-removal was not included in the original contract. These specific items total less than $200, according to the plaintiff. The defendants, however, have offered $200 for such extra work.

Taking the $2,900 found by the trial court to have been the amount of the bid submitted by the plaintiff for remodeling and the $1,490 found by the court to have been the amount of the bid for building the garage, and deducting from the latter figure the sum of $150 for the reduced size of the garage actually constructed— which deduction was made by the trial court—and adding the $200 which the defendants admit they owe the plaintiff for extras, we find that the total due the plaintiff on the contract is $4,440. On this amount should be credited the payment of $2,000 made on account, leaving a balance due the plaintiff from the defendants of $2,440.

The trial court found that the plaintiff had a valid mechanic's lien upon the property of the defendants described in the complaint for the balance due it for the work done for the defendants. The defendants, on the other hand, assert that plaintiff has not complied with the statutory requirements for the perfection and filing of a mechanic's lien, and that the lien therefore cannot be foreclosed.

A mechanic's lien is purely a creature of statute, and, to entitle one to such lien, statutory requirements must be fairly complied with. Schaffer v. Smith, 113 N.W.2d 668 (N.D.1962).

Our law provides that the mingling of charges for materials to be used in the construction, alteration, repair, or improvement of property of different persons, except in cases of joint ownership, "shall defeat the right to a lien against either or any of such persons." Sec. 35–12–06, N.D.C.C.

One of the exhibits in this case is a sales slip showing a charge for ready-mixed concrete sold to the plaintiff for the Surplus Center and for the defendant Schaff. These items are not separated on the bill, but a single charge is made to Trinity Builders, the plaintiff, for such material. The inclusion of any sum due the plaintiff for the material sold, in the mechanic's lien which was filed, clearly is erroneous and is a violation of the prohibition against mingling of charges, as provided by the above-mentioned statute. But the fact that one sales slip out of many did mingle charges would not make void the lien for the charges for materials used in the defendants' projects which were proper. The amount for which a mechanic's lien can be claimed must be reduced by the amount which the defendants owe for material which was delivered to the plaintiff for several projects and for several persons, where the charges were mingled. Thus the amount due the plaintiff from the defendants for which the plaintiff has a lien cannot include a charge for ready-mixed concrete which was included and mingled in a bill for ready-mix for the Surplus Center. The plaintiff is entitled, however, to its lien for the balance due after such reduction.

For reasons stated in this opinion, the judgment entered by the trial court in this case is modified by reducing the amount of such judgment from $3,659.49 to $2,440, together with interest on the amount due from December 23, 1970, to the date of entry of judgment; that the plaintiff is entitled to a lien on the real property described in the complaint for the sum of $2,440, less the amount charged to the plaintiff on sale of ready-mixed concrete for the defendants' projects and for the Surplus Center project, which the plaintiff was constructing for another, since the charges for materials for both parties were mingled. As so modified, the judgment of the trial court is affirmed.

TEIGEN, ERICKSTAD, PAULSON and KNUDSON, JJ., concur.