476 F.2d 583
 ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
v.
Herbert Phillip LACK, Appellant,
v.
Charles M. IVEY, Jr., Administrator of the Estate of Mary
Carolyn Lack, Appellee.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant,
v.
Herbert Phillip LACK, Appellee, and Charles M. Ivey, Jr.,
Administrator of the Estate of Mary Carolyn Lack, Appellee.
 Nos. 72-2294, 72-2295.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1973.
Decided March 29, 1973.
 
 1
 Joseph E. Elrod, III, Greensboro, N. C. (Perry C. Henson and Joseph E. Elrod, III, Greensboro, N. C., on brief), for appellant in No. 72-2294.
 
 
 2
 William D. Caffrey, Greensboro, N. C. (Eugene W. Purdom and Jordan, Wright, Nichols, Caffrey & Hill, Greensboro, N. C., on brief), for appellant in No. 72-2295.
 
 
 3
 Martin W. Erwin, Greensboro, N. C. (Jack W. Floyd, Smith, Moore, Schell & Hunter, Greensboro, N. C., on brief), for appellee Charles M. Ivey, Jr., in No. 72-2294 and for appellees in No. 72-2295.
 
 
 4
 Before RUSSELL and FIELD, Circuit Judges, and BRYAN, District Judge.
 
 ALBERT V. BRYAN, Jr., District Judge:
 
 5
 Herbert Phillip Lack (Lack), after fatally shooting his wife during a marital dispute, pled guilty to the charge of "voluntary manslaughter." Charles M. Ivey, Jr., the Administrator of the Estate of Mary Carolyn Lack (Administrator), then instituted in a North Carolina state court a civil suit for wrongful death against Lack alleging negligence. The St. Paul Fire and Marine Insurance Company (St. Paul) had previously issued an insurance policy to the decedent, agreeing to pay on her behalf, all amounts which she, or her spouse, should become legally obligated to pay in a personal injury action. The policy relieved the company of the duty to defend or pay if the act giving rise to the action was intentional.
 
 
 6
 Contending that it was not obligated under this exclusionary clause to defend or cover any judgment against Lack since he had "intentionally" killed his wife, St. Paul sought a declaratory judgment against Lack in the District Court to this effect. The District Court stayed the state court proceedings, and allowed the Administrator to intervene and assert a cross-claim against Lack for wrongful death. In a bifurcated procedure, a jury found that Lack unintentionally killed his wife and therefore St. Paul was obligated to extend coverage and to defend him. A second jury then held Lack, and consequently St. Paul, liable in damages to the Administrator for the decedent's wrongful death.
 
 I.
 
 7
 The first issue presented is whether the District Court erred in instructing the jury that "voluntary manslaughter" could be interpreted as an admission to either the intentional or culpably negligent killing of a person without malice. Under North Carolina law it appears that voluntary manslaughter is the intentional unlawful killing of a human being and therefore an instruction incorporating culpable negligence as an alternative finding is improper since it does not require intent as a necessary element. See State v. Wrenn, 279 N.C. 676, 185 S.E.2d 129 (1971); State v. Rummage, 280 N.C. 51, 185 S.E.2d 221 (1971).
 
 
 8
 Although this instruction may have been improper it does not constitute reversible error. It is apparent by a reading of the charge in its entirety that the jury was explicitly told to base its verdict, when weighing the admission of guilt, on what Lack "intended at the time he pled guilty to voluntary manslaughter" rather than upon definitional distinctions; and that the issue upon which the case turned, namely, Lack's intent or absence of it at the time of the killing, was adequately put to the jury.
 
 II.
 
 9
 The jury was also instructed to construe any exclusion under the terms of the policy in favor of the insured and against St. Paul. Even if this was error because no ambiguity existed in the policy, it is harmless when the charge is considered as a whole. The jury was adequately charged that the quantum of proof to be met by the plaintiff, St. Paul, was no more than a preponderance of the evidence.
 
 III.
 
 10
 St. Paul contends that Lack's guilty plea should have been conclusive as to his intent and binding in a subsequent civil suit. Since jurisdiction here is based on diversity, the law of the state where the District Court sits, North Carolina, controls questions of res judicata and collateral estoppel. Graves v. Associated Transport, Inc., 344 F.2d 894 (4th Cir. 1965).
 
 
 11
 Taylor v. Taylor, 257 N.C. 130, 125 S. E.2d 373 (1962), establishes that a criminal conviction precludes relitigation of the same issue in a civil suit where one stands to profit from his own wrong. This, however, is distinguishable from the circumstances at bar. Here we have the product of a plea bargaining arrangement rather than a result of litigation of the issues which determine guilt. Consequently, application of the doctrine of res judicata or collateral estoppel would serve only to frustrate the expeditious administration of criminal justice accomplished through the plea bargaining process. Stout v. Grain Dealers Mutual Insurance Co., 307 F.2d 521 (4th Cir. 1962), is not to the contrary. There, the court's holding was limited to a factual determination on the record that the explanation of the admission of guilt was, as a matter of fact, inadequate to rebut the case made out by the plea.
 
 
 12
 Accordingly, a plea of guilty is to be considered as no more than an admission which may be explained rather than a conclusive statement which is binding when there has been no initial litigation of the issues.
 
 IV.
 
 13
 The District Court entered an Order on September 1, 1971, assessing travel and subsistence expenses of Lack as part of the taxable costs of the suit for wrongful death. This being a matter solely within the discretion of the trial judge it will not be reversed. 28 U.S.C. Secs. 1821 and 1920.
 
 V.
 
 14
 The final question is whether the verdict should be reduced under the Wrongful Death Act. N.C.Gen.Stat. Sec. 28-173. At common law one responsible for the death of another cannot profit by his own wrongdoing and share in the wrongful death award. Therefore, under the controlling cases of Cox v. Shaw, 263 N.C. 361, 139 S.E.2d 676 (1965), and Cummings v. Locklear, 12 N.C.App. 572, 183 S.E.2d 832, cert. denied 279 N. C. 726, 184 S.E.2d 883 (1971), the award must be reduced by the statutory share of the wrongdoer.
 
 
 15
 The Administrator argues that this result is precluded by the "slayer statute" which excludes the wrongdoer from taking by declaring him to have constructively died prior to the deceased. N.C.Gen.Stat. Secs. 31A-3 & 31A-4. It would not reduce the award but would enable the other beneficiaries, in this case two children of the deceased, to share Lack's statutory interest in the deceased's estate. The first jury, however, at the urging of Lack and the Administrator, has by its verdict eliminated Lack as a slayer, since the statute defines a slayer as a person who wilfully and unlawfully kills another. Moreover, the slayers' exclusion appears to apply only to inheritance from the decedent's "estate," while wrongful death awards have consistently been deemed not to pass through the personal estate of the deceased but rather to arise out of a right of action belonging peculiarly to the personal representative for the benefit of the intestate successors. See Broadnax v. Broadnax, 160 N.C. 432, 76 S.E. 216 (1912); Hoke v. Atlantic Greyhound Corporation, 226 N.C. 332, 38 S. E.2d 105 (1946); Stetson v. Easterling, 274 N.C. 152, 161 S.E.2d 531 (1968).
 
 
 16
 The case is remanded to the District Court for entry of an order reducing the award by one-third.
 
 
 17
 Affirmed in part; reversed in part and remanded.