504 F.2d 1365
 LINNEMAN CONSTRUCTION, INC., formerly F. H. Linneman, Inc.,
a Colorado corporation, and Ira James Gentle,
Trustee, Appellant,
v.
MONTANA-DAKOTA UTILITIES CO., INC., a Delaware corporation, Appellee.
 No. 73-1923.
 United States Court of Appeals, Eighth Circuit.
 Submitted Sept. 12, 1974.
Decided Nov. 8, 1974.
 
 Holmes Baldridge, Denver, Colo., for plaintiff-appellant.
 William P. Pearce, Bismarck, N.D., for defendant-appellee.
 Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and SMITH, Senior District Judge.*
 GIBSON, Chief Judge.
 
 
 1
 Linneman Construction, Inc.,[1] brought this diversity action against Montana-Dakota Utilities Co., Inc., for monies allegedly due under a written contract for extra work' involved in the construction of gas distribution and service lines in six North Dakota towns. Linneman's complaint sought recovery for three claims: (1) failure to pay contract unit price for installation of mains and service line footage that were power tamped and for some 'boring' and 'rock removal'; (2) location of gas mains behind the curb rather than in streets and alleys; and (3) installation of additional service lines. The jury returned a verdict against Linneman on claims (1) and (3). The District Court,[2] however, foreclosed plaintiff from introducing all its evidence regarding the second claim, the laying of mains behind the curb, and directed a verdict on that claim for defendant. This order of the District Court, as well as the subsequent taxation of costs against Linneman, is asserted as error on this appeal. No appeal was taken on claims (1) and (3).
 
 
 2
 Linneman is a Colorado corporation engaged in the construction of gas, water, telephone and electric lines. Montana-Dakota is a Delaware corporation and a regulated public utility engaged in supplying gas and electric service in North Dakota, South Dakota, Montana, and Wyoming, and gas service only in Minnesota. As part of Montana-Dakota's 'Progress 70' plan to extend its gas service in North Dakota to an additional 12 towns, defendant issued invitations to bidders in February, 1970, inviting bids for the construction of gas distribution lines and service lines in the 12 towns. Bidders were allowed to bid on all 12 towns, or on the six steel towns or six plastic towns only.[3]
 
 
 3
 Provided to the bidders was a list of estimated total pipe footages to be laid and an estimate of the number of service lines to be installed, a copy of the proposed contract and specifications, and maps of each town showing where the distribution mains were to be located within each town. The specifications and the maps were expressly made a part of the contract to the extent not inconsistent with the contract provisions. Linneman's bid for the six steel towns was accepted by Montana-Dakota and the contract was signed March 16, 1970.
 
 
 4
 Linneman began construction of the gas distribution systems May 5, 1970, in Jamestown, North Dakota. During the course of construction of the project, completed in November, 1970, in excess of 766,000 feet of gas mains were laid in the six towns. All of the footage laid was paid for at the unit price specified in the contract for the laying of mains. The present dispute arises from a demand for payment by Linneman of an additional $460,000 above the contract price for the laying of gas distribution mains outside the paved portion of the streets. The above amount is based upon Linneman's computation of the cost of laying some 160,145 feet of mains behind the curb, plus 15 percent for profit and overhead as called for by the 'extras' clause of the contract.[4]
 
 
 5
 In the alternative Linneman asserts a right to quantum meruit or implied contract recovery. We reject at the outset the quantum meruit theory advanced by Linneman as without any foundation in the record. It is clear that the laying of distribution mains behind the curbs is governed by the contract between the parties, either the specific unit price provision or the 'extras' clause.
 
 
 6
 We turn to the consideration of plaintiff's claim for additional compensation under the 'extras' clause, predicated upon an alleged change in the terms and conditions of the contract respecting location of the lines. Linneman attempted to show that at the beginning of construction all the lines were being located in the paved portion of the streets where it was much faster and cheaper for Linneman to lay the mains. However, Linneman contends that after Montana-Dakota received a bid for repaving the streets in an amount much greater than it had estimated, it began moving as much of the construction as possible out of the paved portion of the street and behind the curbs in order to save itself substantial repaving costs. This saved Montana-Dakota the contract prices for cutting and removing the old pavement in addition to the cost of repaving, while increasing threefold the cost to Linneman of laying the mains behind the curbs. To further buttress its contentions that the location of mains behind the curbs was not contemplated by the contract, Linneman contends the maps attached to the contract show that the mains were to be located within the paved portion of the streets.
 
 
 7
 The District Court during trial foreclosed Linneman from offering all of its evidence in support of its claim, and directed verdict for the defendant as a matter of law. While we would have preferred the allowance of all of plaintiff's evidence on this claim, the trial court, as well as we, considered the offer of proof, and we find no error in the circumstances of this case. Construction of the contract is a matter for the court under North Dakota lwa. Anderson v. First National Bank, 6 N.D. 497, 72 N.W. 916, 920 (1897), aff'd, 172 U.S. 573, 19 S.Ct. 284, 43 L.Ed. 558 (1899). Construction of the contract reveals that plaintiff has no cause of action for the extra compensation claimed. This conclusion is necessitated upon either of two grounds.
 
 
 8
 First, even if we could accept plaintiff's theory that the laying of mains behind the curb was an extra under the contract, the clear and unambiguous terms of the 'extras' clause were not complied with. The 'extras' clause provides for a written order for any extra work performed and in addition requires claims to be submitted within 30 days of completion of the extra work. It is undisputed that no written orders were prepared, nor was any claim made until some 10 months after completion of the job. Non-compliance with this 'extras' clause bars recovery for alleged extra work performed under the contract. Goodwin, Inc. v. City of Lafayette, 418 F.2d 698, 701 (5th Cir. 1969); Alden v. Central Power Electric Cooperative, 168 F.Supp. 19, 21 (D.N.D.1958). Although waiver of the contractual requirements is possible, United States v. Henke Construction Co., 157 F.2d 13, 20-21 (8th Cir. 1946); Alden v. Central Power Electric Cooperative, supra, 168 F.Supp. at 21-22, a definite agreement to pay is required to establish a waiver. United States v. Henke Construction Co., supra, 157 F.2d at 21. Here there is no evidence even indicating a definite agreement to pay. The conduct of Linneman during the performance of the contract will not support a conclusion of waiver. No demand for extra compensation was made during the performance of the contract, nor until 10 months after the completion of the job.[5] This is a strong indication that the laying of mains behind the curbs, while more costly, was not regarded by Linneman as an extra under the contract. See Old Colony Trust Co. v. City of Omaha, 230 U.S. 100, 118, 33 S.Ct. 967, 972, 57 L.Ed. 1410 (1913), wherein the Court stated:
 
 
 9
 Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence.
 
 
 10
 Accord, Craig v. Thompson, 177 F.2d 457, 460 (8th Cir. 1949); Elkan v. Sebastian Bridge District, 291 F. 532, 550 (8th Cir. 1923), cert. denied, 268 U.S. 690, 45 S.Ct. 510, 69 L.Ed. 1159 (1925).
 
 
 11
 There is an additional ground upon which the trial court's action in directing a verdict must be sustained. The trial court was bound to apply the law of North Dakota in this diversity action. The North Dakota Supreme Court has recently held regarding claims for extras that:
 
 
 12
 'Extra work,' as used in connection with building contracts, means work which arises outside of and independent of the original contract; that is, something not required in the performance of the original contract, not contemplated by the parties, and not controlled by the terms of such contract.
 
 
 13
 Trinity Builders, Inc. v. Schaff, 199 N.W.2d 914, 918 (N.D.1972).
 
 
 14
 To find that Linneman was entitled to recover for its claim for extra work, the trial court would have had to determine that the claim was for 'labor and materials not contemplated by or embraced in the terms of the original contract.' Trinity Builders, Inc. v. Schaff, supra at 918. The trial court was convinced after reading the contract, as are we, that the claim is based upon work required by any covered within the contract and thus the claim for extras must fail.
 
 
 15
 The contract was a unit price contract. The pertinent unit price provision provides for a single unit price based upon the diameter of the main:
 
 
 16
 For unloading and hauling millcoated steel pipe, fittings, wrappers and other materials, clearing right-of-way, ditching, coating, laying, construction, welding, connecting, cleaning, testing, repairing, backfilling, roll packing, and grading * * *.
 
 
 17
 The contract provision which underlies this disputed claim provides:
 
 
 18
 Distribution mains in general shall be approximately 5-10 feet from the property line in the street and 5 feet from the property line in the alley. Where more specific information is required it will be furnished by the Company.
 
 The specifications provide:
 2. Location of Lines
 
 19
 The lines shall follow the locations as shown on maps furnished by the Company or staked by the Company engineers. The Company reserves the right to make any changes in location which it deems necessary and such changes shall in no manner alter the terms of this contract except as to linear measurements.
 
 
 20
 In a nutshell, resolution of whether the claimed work was an 'extra' requires determination of the meaning of the contract expression '5-10 feet from the property line in the street.' Both parties contend the language is clear and unambiguous, yet each interprets it differently. Linneman argues that 'street' means the paved portion of the dedicated right-of-way between the curbs. Montana-Dakota contends 'street' refers to the entire dedicated public right-of-way. However, as the contract provides that the lines will be located 5-10 feet from the property line in the street, Linneman is forced to argue that we should interpret 'property line' as being synonymous with 'curb', a position as novel as it is untenable. We think it is clear that property line, as used in the contract, as well as in its legal and popular sense, can have only one meaning; that being the line where the fee interests of the various lot owners abut the dedicated public right-of-way.
 
 
 21
 Every lot, of course, has as many property lines as it has sides. * * * The ordinary rectangular city lot therefore has four property lines, two dividing it from the street and alley at front and rear and two dividing it from the neighboring lots on each side.
 
 
 22
 Ujka v. Sturdevant, 65 N.W.2d 292, 294 (N.D.1954).
 
 
 23
 As should be clear from the North Dakota Supreme Court's statement in Ujka, a street begins at the property line, and would include sidewalks and grassy parking areas as well as the paved portion of the right-of-way. Accord, Stockdale v. Lester, Iowa, 158 N.W.2d 20 (1968); City of Beatrice v. Williams, 172 Neb. 889, 112 N.W.2d 16, 21 (1961).[6] We therefore must agree with the trial court that the contract language clearly and unambiguously provided that the laying of the gas distribution mains beneath the grassy parking area as well as within the paved portion of the street, subject to the 5 to 10 foot limitation from the owner's property line, was 'included within' the unit price for the laying of mains and that plaintiff was not entitled to any additional compensation as a matter of law.[7] It was therefore not improper for the trial court to direct a verdict for defendant on that issue.
 
 
 24
 Plaintiff also attacks the District Court's approval of the full amount requested by defendant as costs, $3,781.00 for witness fees and expenses of subsistence in accordance with 28 U.S.C. 1821.[8] We begin with the proposition that 'items proposed by winning parties as costs should always be given careful scrutiny.' Farmer v. Arabian American Oil Co., 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964). The allowance of costs is a matter within the sound discretion of the trial court. Farmer v. Arabian American Oil Co., supra. See generally 6 J.Moore, Federal Practice P54.77 (5.-1) (2d ed. 1974) (hereinafter cited as Moore). The decision of the trial court will only be reversed for an abuse of discretion. Farmer v. Arabian American Oil Co., 324 F.2d 359, 361 (2d Cir. 1963) (en banc), rev'd on other grounds, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964); Spiritwood Grain Co. v. Northern Pac. Ry., 179 F.2d 338, 344 (8th Cir. 1950); see Moylan v. AMF Overseas Corp., 354 F.2d 825, 829 (9th Cir. 1965); Grogan v. United States, 341 F.2d 39, 43 (6th Cir. 1964); cf. Purer & Company v. Aktiebolaget Addo, 410 F.2d 871, 880 (9th Cir.), cert. denied, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969). Contra, St. Paul Fire & Marine Insurance Co. v. Lack, 476 F.2d 583, 586 (4th Cir. 1973).[9]
 
 
 25
 Plaintiff presents two major areas of disagreement with the award of costs: (1) that mileage beyond 100 miles was allowed for witnesses from outside the district, and (2) that witness and subsistence fees were allowed for days that defendant's witnesses were not necessarily present at trial.
 
 
 26
 Linneman argues that the '100-mile rule' limits the taxation of costs for mileage for witnesses outside the district to 100 miles each way. The effective territorial limit of a subpoena is 100 miles from the place of trial for witnesses outside the district. Rule 45(e), Fed.R.Civ.P.[10] The 100-mile rule was developed by the courts in recognition of the limited distance a witness could be compelled to travel to testify. The rule has had a long history in the federal courts. See Spiritwood Grain Co. v. Northern Pac. Ry., supra, 179 F.2d at 344; Kirby v. United States, 273 F. 391, 396 (9th Cir. 1921) (and cases cited therein). But see United States v. Sanborn, 28 F. 299, 302-303 (2d Cir. 1886).[11]
 
 
 27
 In Farmer the Court rejected an argument that federal district courts can never tax as costs expenses for transporting witnesses more than 100 miles.[12]
 
 
 28
 However, it added with respect to the 100-mile rule:
 
 
 29
 That rule, we think, is a proper and necessary consideration in exercising discretion in this field. The century-and-a-half-old special statutory provision relating to service of subpoenas more than 100 miles from the courthouse is designed not only to protect witnesses from the harassment of long, tiresome trips but also, in line with our national policy, to minimize the costs of litigation, which policy is strongly emphasized in the Federal Rules of Civil Procedure.
 
 
 30
 Farmer v. Arabian American Oil Co., supra, 379 U.S. at 234, 85 S.Ct. at 416.
 
 
 31
 This court has not had occasion to consider the proper application of the 100-mile rule since the Supreme Court decision in Farmer. We think the proper application of the rule, in light of Farmer, is to limit travel expenses for witnesses outside the district to 100 miles absent special circumstances. See Sperry-Rand Corp. v. A-T-O, Inc., 58 F.R.D. 132 (E.D.Va.1973); Kaiser Industries Corp. v. McLouth Steel Corp., 50 F.R.D. 5 (E.D.Mich.1970); Vorburger v. Central of Ga. Ry., 47 F.R.D. 571 (M.D.Ala.1969); Erving Paper Mills v. Hudson-Sharp Machine Co., 271 F.Supp. 1017 (E.D.Wis.1967); cf. Grogan v. United States, supra; Morgan v. Kight, 294 F.Supp. 40, 42 (E.D.N.C.1968). But cf. Purer & Company v. Aktiebolaget Addo, supra; Electronic Specialty Co. v. International Controls Corp., 47 F.R.D. 158 (S.D.N.Y.1969). See generally 6 Moore P54.77 (5.-1) at 1726-29; Annot., 13 L.Ed.2d 1036 (1965).
 
 
 32
 As stated by Judge Smith in his dissent in Farmer v. Arabian American Oil Co., 324 F.2d 359, 365 (2d Cir. 1963) (en banc), rev'd 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964):
 
 
 33
 It has not been accident that the American litigant must bear his own cost of counsel and other trial expenses save for minimal court costs, but a deliberate choice to ensure that access to the courts be not effectively denied those of moderate means.
 
 
 34
 In the present case the testimony of the witnesses residing outside the district appears merely cumulative to that given by the substantial number of witnesses for defendant from within the district. We do not find any special circumstances to justify an allowance of mileage greater than 100 miles in the present case.[13] The bill of costs will therefore be reduced by $189.40, the amount of excess mileage taxed against plaintiff.[14]
 
 
 35
 We are disturbed, as is the plaintiff, by the amount of witness and subsistence fees taxed against plaintiff. We first note that there is duplication of fees within the defendant's itemized bill of costs. In addition to the duplicated mileage noted at note 14, supra, defendant billed 10 days fees for Lawrence Armstrong and 9 days fees for Albert Mayer, both residents of Bismarck, the place of trial. Because the trial lasted only 8 days it is difficult for this court as we believe it is for the defendant, to justify these additions.
 
 
 36
 We intimate no disagreement with the general rule that witness and subsistence expenses are not limited to the day the witness testifies but include those days in which the witness necessarily attends trial. See 6 Moore, P54.77 (5.-1) at 1728-29 (and cases collected at n. 10). This rule, however, does not operate as an open invitation to fill the courtroom with witnesses during the entire trial. It has long been the practice in this circuit to allow expenses for only sucy number of witnesses as the court deems reasonable. Kane v. Luckman, 131 F. 609, 621-622 (8th Cir. 1904). They will also only be allowed expenses for the number of days the court deems reasonable.
 
 
 37
 We have no difficulty in finding that duplicate billing of fees is patently unreasonable. These expenses in the amount of $120.00 will be disallowed. We also think it unreasonable for defendant to retain 19 witnesses in court upon the possibility that their testimony might be needed for rebuttal of the rebuttal testimony of a lone plaintiff's witness, the substance of whose testimony defendant was informed of in advance. After reduction for duplication, witness fees and subsistence allowances amounting to $3,104 were requested. We are convinced that a substantial percentage of this amount is for witnesses not necessarily in attendance at trial. We therefore are ordering a reduction of $1,500 in this amount. We have thus approved defendant's bill of costs in the amount of $1,971.60. The remainder of the $3,781.00 taxed as costs to plaintiff is hereby disallowed. In all other respects the judgment of the District Court is affirmed.
 
 
 
 *
 The Honorable Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation
 
 
 [1]
 Subsequent to the decision in the District Court, Linneman was adjudged a bankrupt in the District of Colorado. Upon application by the appointed Trustee, this court by order of March 18, 1974, allowed the Trustee, Ira James Gentle, to intervene and be substituted on behalf of Linneman on this appeal
 
 
 [2]
 The Honorable Bruce Van Sickle, United States District Judge for the District of North Dakota
 
 
 [3]
 'Steel' towns were those where the distribution mains were to be of steel pipe. 'Plastic' towns were those where the distribution mains were to be of plastic pipe
 
 
 [4]
 The 'extras' clause of the contract provided:
 Contractor shall be allowed no additional compensation for any extras or any work performed by the Contractor not contemplated by this agreement or by said plans and specifications, except under written order signed by the Company's representative, which order shall specify the amount payable to the Contractor on account of such extra work. Where no specific amount is agreed upon for extra work and for which no unit price is set forth in this proposal, the Contractor agrees to execute such work on the basis of cost plus 15% For overhead and profit. Contractor to furnish hourly cost rates to be charged for any extra work. In no event will bills or claims for extras or extra work so ordered be allowed unless submitted to the Company within thirty (30) days from the date of furnishing or completion of extra work.
 
 
 [5]
 On May 18, 1971 (six months after completion) Linneman wrote stating the total balance due under the contract was $43,510.65. The defendant had retained some $40,000 as permitted by the contract pending completion and satisfaction of all claims for labor and material utilized on the project
 
 
 [6]
 Although not directly apposite, North Dakota statutes indicate that the definition of street used by the trial court was the proper one. N.D.Cent.Code 39-01-01(63) (1972), provides:
 'Street' shall mean the entire width between boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel.
 And in N.D.Cent.Code 39-01-01(56) 'sidewalk' is defined as a 'portion of the street.'
 
 
 [7]
 We have studied the maps made a part of the contract and find that they provide no support for plaintiff's contention. The maps show only that the gas distribution lines were to be laid within the entire public right-of-way, not between the curbs as contended by plaintiff. The maps closely resemble and were prepared from city maps which show only the entire dedicated right-of-way. It is almost incredible that Linneman, an experienced utility contractor, could actually have misinterpreted these maps in the manner asserted at trial
 
 
 [8]
 That section provides:
 A witness attending in any court of the United States * * * shall receive $20 for each day's attendance and for the time necessarily occupied in going to and returning from the same, and 10 cents per mile for going from and returning to his place of residence. * * * Witnesses * * * who attend at points so far removed from their respective residence as to prohibit return thereto from day to day shall be entitled to an additional allowance of $16 per day for expenses of subsistence including the time necessarily occupied in going to and returning from the place of attendance.
 
 
 [9]
 The Fourth Circuit In Lack held that the trial court's determination of costs would not be reversed on appeal. We believe that the prevailing view that such determinations are reviewable is the better approach as it recognizes the discretion vested in the trial court to determine costs but preserves an avenue of redress in those cases where there has been an abuse of discretion
 
 
 [10]
 Rule 45(e), Fed.R.Civ.P. has its origins in 1 Stat. 335 (1793) which provided:
 Sec. 6. And be it further enacted, That subpoenas for witnesses who may be required to attend a court of the United States, in any district thereof, may run into any other district; Provided, That in civil causes, the witnesses living out of the district in which the court is holden, do not live at a greater distance than one hundred miles from the place of holding the same.
 
 
 [11]
 In Kemart Corp. v. Printing Arts Research Laboratories, Inc., 232 F.2d 897, 905 (9th Cir. 1956), the Ninth Circuit altered its formulation of the 100-mile rule to provide:
 Mileage allowable to a witness brought from outside the district should correspond to the distance from the place of trial to which the witness would have been amenable to service of the subpoena (i.e., any place within the district or 100 miles from the place of trial, whichever is larger).
 
 
 [12]
 Farmer v. Arabian American Oil Co., supra, 379 U.S. at 232, 85 S.Ct. 411
 
 
 [13]
 We recognize that payment of mileage for witnesses outside of the district from their point of entry into the district, as was done in this case, may be justified when the witness is a necessary and material witness in the proceedings and does not give merely redundant or cumulative testimony. Rather than approving this practice as a proper exercise of discretion in every case, we feel it is better to leave the determination in each case to the discretion of the district court as it is in the best position to determine the necessity and materiality of the witness' testimony
 
 
 [14]
 The excess mileage charged taking into account the 100-mile rule was $130.60. However, defendant also charged mileage twice for two of its witnesses. This amounted to the extra $58.80 included in the above total. We will have more to say regarding this duplication infra