**SERVICE STEEL ERECTORS COMPANY, Plaintiff,**

v.

**SCE, INC., successor to Southern Construction & Engineering Co., et al., Defendants.**

**Civ. A. No. 81–0061–C.**

United States District Court, W.D. Virginia, Charlottesville Division.

Sept. 9, 1983.

M.E. Gibson, Jr., Thomas E. Albro, Charlottesville, Va., for plaintiff.

Ronald R. Tweel, Charlottesville, Va., Roderick B. Mathews, Richmond, Va., for defendants.

### MEMORANDUM OPINION

MICHAEL, District Judge.

This diversity action comes before the court on defendants' summary judgment motion pursuant to Fed.R.Civ.P. 56. The matter has been fully briefed and argued to the court and is now ripe for disposition.

In this action, plaintiff, Service Steel Erectors Company ("Service Steel"), claims damages of $245,270 for alleged breaches of a construction subcontract by SCE, Inc. ("SCE"). SCE was the general contractor for the Moore's Creek Advanced Water

Treatment Plant constructed for the Rivanna Water and Sewer Authority ("Owner"). Other defendants who joined in the summary judgment motion are Federal Insurance Company, the bonding company for the project, and Sullivan, Long & Hagerty, Inc., the parent corporation of SCE. Service Steel subcontracted to install reinforcing steel for the project. The subcontract provided that Service Steel should unload and erect in place the reinforcing steel and wire mesh according to the plans and trade practices. The essence of Service Steel's claims is that it performed extra work for which it is due compensation under the subcontract. Service Steel contends additionally that it suffered consequential damages such as lost profits resulting from SCE's failure to pay for the extra work.

Service Steel alleges that between May 1979 and September 1980 it was required to refabricate the steel sent from the supplier, Owen Steel, not a party to this action. It states that in many instances the steel was not fabricated properly. Deposition testimony from both the Service Steel superintendent on the project, Michael Jernigan, and the SCE field superintendent, Kenneth Allen, indicates that on a number of occasions Service Steel had to "field bend" steel in order to make it suitable for the project. Service Steel now asserts that this refabrication was extra work not included in the subcontract.

The contract between Service Steel and SCE provides specific requirements for extra work claims. In short, the contract contains two primary requirements:

(1) No extra work is compensable unless authorized by written order of the contractor, SCE.

(2) All claims for extra work must be made in writing within seven days after cost is incurred. All claims must include an itemized cost sheet showing the actual cost of performance of the work.[1]

Service Steel does not claim to be unaware of these requirements. Indeed, in deposition testimony both the president of Service Steel, Emory Jernigan, and its project superintendent, Michael Jernigan, indicated that these requirements were standard industry practice. Michael Jernigan admitted that SCE's Kenneth Allen mentioned the seven day claims limitation to him frequently, reminding Jernigan that after seven days SCE was not responsible for any extra work.

The Supreme Court of Virginia in *Atlantic & Danville Ry. v. Delaware Construction Co.*, 98 Va. 503, 37 S.E. 13, 16 (1900), has endorsed contractual provisions that call for prior agreement as to extras, stating:

An obvious purpose of such a provision is to avoid subsequent disagreement, and prevent just such a controversy as has arisen in this case.... All are aware of the frequency with which it happens in the construction of buildings and other improvements that claims are made for alleged extra work, which give rise to disputes and litigation. Such a provision is a wise, and not an unusual, one in building contracts, and it is held by the authorities to be obligatory upon the parties, and not to be disregarded.

Service Steel nevertheless concedes that it did not comply with either the written approval requirement or the timely claim requirement. Rather, the sole issue for determination is whether SCE waived its contract rights as to both requirements.

---

1. The written authorization requirement is found in the contract documents between SCE and Owner, which in Section 1 of the subcontract between Service Steel and SCE are expressly incorporated into the subcontract. Article 24 of the General Conditions requires that "[n]o Extra Work shall be undertaken except by written order from the [Contractor]." It further provides that "[i]n the absence of such written order no claim for extra compensation by reason of performance of Extra Work shall be allowed." Section 7 of the subcontract states additionally that all claims for extra work be made within seven days of the date the cost is incurred. Article 52 of the General Conditions incorporated in the subcontract requires such claims to be in writing. Finally, Article 46 of the General Conditions requires that in the absence of an agreed-upon price for extra work, "the [Subcontractor] shall submit to the [Contractor] itemized cost sheets showing actual cost of performance of the work."

While admitting that it failed to obtain written approval for extras and failed to make itemized claims for extras, Service Steel asserts that by its conduct SCE waived these provisions. In asserting waiver Service Steel has the burden of establishing "by clear and unmistakable evidence" that SCE waived these contractual requirements. *May v. Martin*, 205 Va. 397, 137 S.E.2d 860, 865 (1964).

SCE contends that the contract itself expressly defines and limits the circumstances that will constitute a waiver. Article 51 of the General Conditions provides:

> No oral order, objection, claim or notice given by any party to the others shall affect or modify any of the terms or obligations contained in any of the Contract documents, and none of the Contract documents shall be held to be waived or modified by reason of any act whatsoever, other than by a definitely agreed upon waiver or modification thereof in writing, and no evidence of any other waiver or modification shall be introduced in any proceeding.

This express merger clause was certainly clear and unambiguous. Nor has Service Steel made any claims other than on the contract containing this merger clause such as claims of oral contracts or quasi-contractual recovery. Certainly there is no dispute that the contract was entered into by two commercially sophisticated parties. SCE's argument that the contract provisions themselves bar any sort of implied waiver is consequently persuasive. The court finds no Virginia authority on this specific point, nor has SCE disclosed such authority, but in *Chemical Construction Corp. v. Continental Engineering, Ltd.*, 407 F.2d 989 (5th Cir.1969), the court held that such a merger clause permitted a directed verdict against the subcontractor who claimed he was due compensation for extra work in spite of the contract provision requiring express written change orders. The court, of course, may not make a new contract for the parties. *Marshall*

*v. Murray Oldsmobile Co.*, 207 Va. 972, 154 S.E.2d 140, 144 (1967).

Nonetheless, even if the merger clause failed to bar any implied waiver by SCE of the contractual provisions requiring written approval and timely claims for extra work, there appears to be no genuine issue of material fact regarding such an implied waiver. Service Steel argues that waiver may be found if the party performing the extra work did not create the need for the extra work, if the general contractor or owner ordered the extra work and understood that the party performing the work would be paid for it, and if the facts together with the trade practices demonstrate that the type of work would not normally be undertaken without additional compensation.

Service Steel cites three cases for this implied waiver rule that it claims reflects the "well established" Virginia law on implied waiver. The first, *Jefferson Hotel Co. v. Brumbaugh*, 168 F. 867 (4th Cir. 1909), is clearly inapposite here, first of all because the Fourth Circuit apparently looked not to Virginia law but to federal common law to decide plaintiff's claim for compensation for extra work under a contract.[2] Second, the court did not rely on a waiver of the written authorization requirement of the contract; the architect in that case *did* order the extra work in writing "except in a very few instances." *Id.* at 876.

Service Steel further relies on *Worley Brothers v. Marus Marble*, 209 Va. 136, 161 S.E.2d 796 (1976). While in this case a subcontractor recovered extra compensation from the general contractor, no issue of waiver arose in the decision. Rather, the issue was whether the parties in contracting made a mutual mistake regarding specifications in the construction contract. Further, there was no written authorization requirement for extra work in the case. Thus, *Worley Brothers* offers no support for Service Steel's theory of implied waiver.

---

**2.** *Jefferson Hotel* was decided prior to *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The opinion cites no Virginia cases on this issue.

Finally, Service Steel offers as legal support for implied waiver the case of *John W. Johnson, Inc. v. J.A. Jones Construction Co.*, 369 F.Supp. 484 (E.D.Va.1973). The painting subcontractor in this case was held to be due compensation for extra work done because the general contractor "failed to clean the steel properly and initially failed to provide proper lighting" which hindered the subcontractor in its work. *Id.* at 490–91. No question of waiver arose on this issue. More in point, though, is the court's discussion of the painting subcontractor's claim for extra pay for work not done pursuant to a written work order from the contractor. The contract provided that "no alteration or changes shall be made ... except on the written order of the Contractor." *Id.* at 494. The court held that the subcontractor's failure to obtain a written work order as required by the contract precluded recovery of additional compensation. The court, in rejecting the subcontractor's claim, stated:

> The Plaintiff's President admits in effect he was aware that there could be a controversy over this painting. He could have insisted in advance upon a written order, or requested a decision in advance by the Architect.
>
> The Plaintiff failed to take any such steps. It cannot now recover in the absence of a written order directing the work to be done.

*Id.* This court thus finds no "well established" Virginia rule on implied waiver.

Courts in other jurisdictions have addressed the issue of implied waiver in the context of extra work claims. In *Linneman Construction, Inc. v. Montana-Dakota Utilities Co.*, 504 F.2d 1365 (8th Cir. 1974), the court affirmed a directed verdict for the defendant. Like the contract in this action, the *Linneman* contract barred claims except where the subcontractor obtained a written work order and submitted timely claims after performance of the extra work. Addressing the issue of waiver in this context, the court stated:

> The "extras" clause provides for a written order for any extra work performed and in addition requires claims to be submitted within 30 days of completion of the extra work. It is undisputed that no written orders were prepared, nor was any claim made until some 10 months after completion of the job. Non-compliance with this "extras" clause bars recovery for alleged extra work performed under the contract. Although waiver of the contractual requirements is possible, a definite agreement to pay is required to establish a waiver. Here there is no evidence even indicating a definite agreement to pay. (Citations omitted).

*Id.* at 1368.

Deposition testimony removes any genuine issue of fact as to waiver. SCE indisputably entered into no definite agreement to pay for any extra work, nor took any other action demonstrating an intention to abandon its contractual rights. Indeed, with respect to the seven day itemized claim requirement, Service Steel's Michael Jernigan admitted that SCE's Kenneth Allen reminded Service Steel of it "frequently." Allen further testified in his deposition that while extra work was done at times by Service Steel, he never authorized any payment to be made by SCE. Further, he testified that the only payment that might possibly be forthcoming would be from Owen Steel, not SCE. Further, Michael Jernigan did not dispute that SCE's representatives never told him that Service Steel would be paid by SCE.

Service Steel asserts that SCE's apparent refusal to sign some backcharges that Service Steel presented to SCE is evidence demonstrating a genuine issue of material fact as to waiver. Case law, however, suggests that such refusal is itself evidence that *negates* the idea of waiver of a contract requirement of a written order. *See R.R. Construction Co. v. Junior College Dist. No. 529*, 55 Ill.App.3d 115, 12 Ill.Dec. 795, 370 N.E.2d 599 (Ct.App.1977). This court similarly does not find waiver in this conduct; rather, SCE appears to have been asserting its contractual rights.

The court similarly cannot find waiver with respect to the contract's timely notice

requirement. Service Steel again asserts SCE's refusal to· sign backcharges and a proposal that Service Steel present its extra work claims to Owen Steel as evidence that SCE waived its right to timely written notice of any claims. SCE did not waive its right to notice by inquiring whether Owen Steel would be willing to provide some compensation to Service Steel. Indeed, the deposition testimony establishes that SCE's efforts to formulate a backcharge to Owen Steel on behalf of Service Steel were hampered by Service Steel's failure to document its claims for extra work.

In sum, Service Steel's evidence does not meet the test of "clear and unmistakable evidence" of waiver of the contractual terms requiring written approval and timely notice of claims for extra work. After a careful review of the exhibits and the extensive deposition testimony, this court finds that there exists no genuine issue of material fact with regard to waiver.

Because the court finds no liability on the part of the defendants for the claimed extra work, the court need not decide defendants' motion for summary judgment with respect to Service Steel's claim for consequential damages. An appropriate order shall this day issue.